HANOVER INSURANCE COMPANY, Respondent,

v.

Douglas NEWCOMER and Samantha Locke, Appellants.

No. 29813.

Missouri Court of Appeals, Western District.

July 31, 1979.

Joseph H. Moore, Kansas City, for appellants.

Joseph B. Bott, Kansas City, for respondent.

Before SOMERVILLE, P. J., and PRITCHARD and MANFORD, JJ.

MANFORD, Judge.

Appeal from declaratory judgment, concluding that policy afforded no coverage for actions of insured within the terms of the policy. Affirmed.

This case, having been tried to the court, is reviewed and disposed of pursuant to Rule 73.01.

Appellant Douglas B. Newcomer was a named insured under a homeowner's policy issued by respondent.

On June 15, 1974, Newcomer and Samantha Locke went to an afternoon party. They returned to Miss Locke's residence at approximately 5:30 p. m. At 7:00 p. m., Newcomer and Miss Locke attended another party until sometime between 11:30 p. m. and midnight. At both parties, Newcomer consumed alcoholic beverages. Either en route to and from the parties and/or while at these parties, he smoked more than one marijuana cigarette. He had lost the keys to his motor vehicle at the second party, so he and Miss Locke were driven to his residence by one Teddy Johnstone. Upon their arrival at his residence, Newcomer was screaming and shouting in a threatening manner toward Miss Locke and Mr. Johnstone. His screaming and yelling included threats to kill Miss Locke and Mr. Johnstone.

Newcomer was let out of the Johnstone vehicle at his residence. As Miss Locke and Mr. Johnstone drove away, Newcomer was standing in the middle of the street, screaming and shouting. Miss Locke and Mr. Johnstone drove around the block and returned to Newcomer's residence. Miss Locke went inside.

Miss Locke testified upon entry to Newcomer's residence, she observed Newcomer with a ceremonial machete hanging from his belt. Miss Locke further testified he attempted to secure a container of marijuana from a drawer and she attempted to get the container away from him. At this point, he threw Miss Locke against a wall and began throwing pool balls, which were on his pool table, all around the room. Again, Miss Locke attempted to stop him, this time being thrown to the floor. Miss Locke testified at this point she attempted to leave, and Newcomer began swinging the machete around the room. He approached Miss Locke, according to her testimony, a distance of approximately 12 feet while swinging the machete, striking her right leg in the groin area.

Newcomer testified he did not remember yelling or screaming, but did recall throwing the pool balls and swinging the machete. It was his testimony that he chopped the door jams in the living room, and that he struck the pool table with machete. He also recalled striking Miss Locke with the machete, but contended the striking of Miss Locke's leg was the continuation of a chopping action on the door frame.

Miss Locke was removed to the hospital by Teddy Johnstone, who upon entry into Newcomer's residence, sprayed Newcomer with mace.

Miss Locke filed claims against Newcomer for damages. While these claims were pending, respondent filed this action herein, seeking to avoid coverage under the personal liability provision of its policy. Miss Locke then filed suit against Newcomer in four counts. That petition sought damages as follows: Count I—compensatory dam-

ages for intentional assault; Count II—punitive damages for intentional assault; Count III—compensatory damages for wanton and reckless conduct without presence of mind and Count IV—punitive damages for wanton and reckless conduct.

The policy of insurance which was admitted into evidence contained the liability coverage portion, as well as the exclusion referred to in respondent's second amended petition. These portions of the policy read as follows:

## "SECTION II

### COVERAGES

COVERAGE E—PERSONAL LIABILITY

This Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence."

and the exclusionary clause:

*"This policy does not apply*:

1. *Under Coverage E—Personal liability and Coverage F—Medical Payments to Others*: . . .

   f. *to bodily injury or property damage which is either expected or intended from the standpoint of the Insured.*

Pending this appeal, Miss Locke dismissed Counts I, II and IV of her petition. Upon a later date, a stipulation of dismissal was filed regarding Count III of her petition.

On appeal, two points are raised. First, Newcomer contends the injuries he caused were the accidental results of his actions and the trial court erred in declaring that respondent's policy did not cover Newcomer's acts as there was no "occurrence" as defined in the policy. Secondly, the trial court erred in declaring respondent had no duty to defend Newcomer in the suit for damages brought by Miss Locke under Count III of her petition.

Both points are taken up and ruled against Newcomer. The evidence on the record speaks for itself.

The facts are undisputed relative to Newcomer's having struck Miss Locke apparently while he was intoxicated and under the influence of marijuana. Newcomer's sole contention is premised upon his state of mind at the time of the blow struck upon Miss Locke. He would have the court conclude that since he intended no resulting harm toward Miss Locke, his actions resulting in striking her with the machete were an accident and thus an "occurrence" within the definition of that term as contained within the insurance policy.

It is totally impossible for the court to know with certainty the exact mental attitude of Newcomer and must face the task of interpreting such attitude from the evidence.

The status of Newcomer, of course, sways between intentional conduct versus accidental conduct. If the former is supported by the evidence, then the trial court was absolutely correct. If the evidence supports the latter attitude, the insurer is responsible.

Cited for the court is *Subscribers at Auto. Club, etc. v. Kennison*, 549 S.W.2d 587 (Mo. App.1977), where at p. 590, the court declared, "Intended results are not only those results which are desired. If a person knows consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. (citation omitted) Therefore, an admission of specific intent is not the only way to show intent to cause harm; it can be inferred from facts and circumstances surrounding an act . . ." While *Subscribers at Auto. Club, etc. v. Kennison, supra,* is without doubt a sound logical declaration of the law, for our purposes herein, it does not go far enough. In *Subscribers at Auto. Club, etc. v. Kennison, supra,* the court was disposing of a dispute within the exclusion language of a policy which declared, " 'This policy does not apply under Part I: . . . to bodily injury or property damage caused intentionally by or at the direction of the assured.' "

That exclusion clause differs from the one before the court which declares said policy shall not apply "to bodily injury or property damage which is either expected or intended from the standpoint of the Insured."

Thus, we have a different breed of exclusion set forth herein and it appears our courts have never passed upon the interpretation of this particular wording. The case at hand lends itself to an interpretation of relatively new policy language.

Other jurisdictions have decided the question of expected or intended, and they are taken up for discussion. *State Farm Fire & Casualty Company v. Muth*, 190 Neb. 248, 272, 207 N.W.2d 364 (1973), involved a defendant who fired a BB gun from a moving vehicle. A pellet from the gun struck another person in the eye, causing the loss of sight. The injured plaintiff recovered in tort against the defendant. The insurer filed a declaratory judgment action on the exclusion portion of the policy. The court ruled against the insurer, declaring that since the insured (defendant in the tort action) did not specifically intend to harm anyone, the exclusion did not apply and the carrier was liable. Other cases following this same rule and cited in *State Farm Fire & Casualty Company v. Muth, supra*, include *State Farm Mutual Auto Ins. Co. v. Worthington*, 405 F.2d 683 (8th Cir. 1968) and *Lumbermens Mut. Ins. Co. v. Blackburn*, 477 P.2d 62 (Okl.1970). These two cited cases, however, contained language found in the policy exclusion considered in *Subscribers at Auto. Club, etc. v. Kennison, supra*. Also cited in *State Farm Fire & Casualty Company v. Muth, supra*, were *Rankin v. Farmers Elevator Mutual Insurance Co.*, 393 F.2d 718 (10th Cir. 1968) where the insured deliberately sideswiped a motorcycle, causing personal injury to the rider. The court, in that case, at 720, declared, "The serious injury of the rider of the motorcycle was a consequence of the deliberate collision and should have been expected and hence intended." Contrasted cases cited include *Peterson v. Western Casualty & Surety Co.*, 5 Wis.2d 535, 93 N.W.2d 433 (1958); and *Morrill v. Gallagher*, 370 Mich. 578, 122 N.W.2d 687 (1963), holding that the facts showed no specific intention on the part of the insured's in harming anyone and hence, the exclusion did not apply.

In yet another decision, *Farmers Automobile Insurance Association v. Medina*, 29 Ill.App.3d 224, 329 N.E.2d 430 (1975), involving the ignition of a puddle of gasoline at the rear of a motor vehicle, the court held such act to be an intended act by the insured. The court concluded, at 432, "In several cases which have considered exclusionary clauses containing the term 'expected' in addition to the term 'intended' the courts have failed to find that the addition to the term 'expected' affected the outcome of the case." A concurring opinion in this case did not equate "intended" and "expected" as synonymous and would apply them to different situations. To state in another way, the concurring opinion stated, at 436, ". . . a different degree of proof is necessary for each . . . a greater degree of proof being required to establish intent than to establish expectation."

If this concurring opinion were adopted, it would introduce the concept of foreseeability from a finding that an injury was one which could be expected. The net effect would be to inject or implant an intent to cause harm into exclusionary clauses involving the terms expected or intended. The foreseeability would then continue to be an element of ordinary negligence without the concurring requirement of an intentional act, whether expressed specifically or inferred from the nature or character of the act. This concurring opinion is not adopted herein.

As regards coverage questions, "Foreseeability is irrelevant to the coverage issue." *Hartford Fire Ins. Co. v. Spreen*, 343 So.2d 649, 651 (Fla. 3rd DCA 1977). That case denied coverage to the insured where he deliberately struck another person in the face, causing an eye injury. For a case where the result claimed was not to have been foreseen by the insured, see *Butler v. Behaeghe*, 37 Colo.App. 282, 548 P.2d 934

(1976). The homeowner insured was denied coverage when he caused impairment of the sight of another when he swung a pipe at him. The court, in that case, stated, at 938, "Where coverage is excluded if bodily injury is 'intended or expected' by the insured, such exclusion is inapplicable if and only if the insured acts without any intent or any expectation of causing any injury, however slight. And conversely, such exclusion is applicable if the insured acts with the intent or expectation that bodily injury will result even though the bodily injury that does result is different either in character or magnitude from the injury that was intended."

That the act of an insured need not be expressly intentional, but can be inferred, see *Continental Western Ins. Co. v. Toal*, 309 Minn. 169, 177, 244 N.W.2d 121, 125 (1976), wherein the court declared, "an injury is 'expected or intended' from the standpoint of the insured if a reason for an insured's act is to inflict bodily injury *or* 'when the character of the act is such that an intention to inflict an injury can be inferred' as a matter of law." See also *Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885 (Minn.1978).

The evidence herein established that appellant Newcomer advanced on Miss Locke, wildly swinging the machete. That the evidence established he was under the influence of intoxicants and marijuana is of no consequence, for the law must not permit the use of such stimuli to become a defense for one's actions.

The rules cited in *State Farm Fire & Casualty Company v. Muth, supra, Continental Western Ins. v. Toal, supra* and *Butler v. Behaeghe, supra*, are adopted herein and when applied to the facts of this case, the trial court, although faced with conflicting testimony, did and properly could conclude that the act of appellant Newcomer, in swinging the machete, was an intentional act from which an injury could be expected. Hence, by virtue of the application of those rules, the court properly concluded that the resulting injury to Miss Locke was not an occurrence within the insuring clause of the policy because of the application of the exclusionary clause.

The trial court heard the evidence, which was substantial. The judgment was not against the weight of the evidence and the judgment did not erroneously declare or erroneously apply the law, thus satisfying the rule in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

The judgment of the trial court, for the reasons set forth herein, in all respects is affirmed.

All concur.