**TRUCK INSURANCE EXCHANGE, Respondent,**

v.

**Edward L. PICKERING, Respondent,**

**Mrs. Nelda Cross, Appellant,**

**Roy A. Cross, Respondent.**

**No. WD 32507.**

Missouri Court of Appeals, Western District.

Sept. 21, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Nov. 2, 1982.

Austin B. Speers, Kansas City, for appellant.

Heilbron & Powell, Sylvester Powell, Jr., Kansas City, for Truck Ins. Exchange.

Before SOMERVILLE, C.J., and WASSERSTROM and MANFORD, JJ.

SOMERVILLE, Chief Judge.

A declaratory judgment action was brought by Truck Insurance Exchange (Exchange) seeking determination of whether its policy of automobile liability insurance extended coverage for the death of Denver Cross and purported injuries sustained by Roy Cross as the result of an incident which took place at approximately 1:30 A.M., December 23, 1978, near the northeast corner of the intersection of Pittman Road and 40 Highway, Jackson County, Missouri. The other parties to the action, all of whom were joined as defendants, were Mrs. Nelda Cross, widow of Denver Cross, deceased, Roy Cross, and Edward L. Pickering, owner and driver of the insured vehicle, a Ford pickup truck. It is appropriate to note that a separate action for wrongful death was pending between Mrs. Nelda Cross as plaintiff and Edward L. Pickering as defendant.

A bench trial culminated in a judgment favorable to Exchange incorporating extensive findings of fact and conclusions of law. Nelda Cross, widow of Denver Cross, deceased, is the sole appellant.

The policy provision which lies at the heart of this controversy is Part I, Coverage A (Bodily Injury Liability), which, insofar as here pertinent, reads: "To pay all damages which the insured becomes legally obligated to pay because of (A) bodily injury to any person . . . caused by an occurrence to which this insurance applies." "Occurrence" as used therein is defined in paragraph 40 (M) of the definitions section of the policy: " 'Occurrence' means an event, or series of events, including injurious exposure to conditions, proximately caused by an act or omission of the insured regardless of the number of persons, vehicles or objects, affected by such act or omission which results, during the policy period, in bodily injury or property damage, *neither expected nor intended from the standpoint of the insured.*" (Emphasis added.)

An assimilation of facts with the policy provision put in issue is required to lay a foundation for determining the existence or nonexistence of coverage in this case. To this end, a plethora of substantial, credible evidence supported these findings of fact by the trial court. On December 23, 1978, at approximately 1:30 A.M. Edward L. Pickering (Pickering), owner and driver of the insured pickup truck, with one John Nash as a passenger, was proceeding in a westerly direction on Highway 40 in the City of Independence. When the pickup truck reached a point a short distance east of the junction of Highway 40 and Pittman Road (a north-south street), a diesel tractor, driven by Denver Cross in an easterly direction on Highway 40, made a left hand turn in front of the pickup truck. Pickering took evasive action to avoid a collision with the diesel tractor. The diesel tractor pulled into the parking area on the north side of Highway 40 and immediately east of Pittman Road, and came to a stop, headed north, with the front of the tractor a foot or two from a chain link fence running east and west enclosing an auto salvage lot.

Pickering and his passenger, piqued because the diesel tractor had made a left turn in front of them, reversed their direction and pulled the pickup truck into the parking area where the diesel tractor was parked. Pickering stopped his pickup truck so that it was facing the left side of the diesel tractor.

Pickering's and Nash's sole purpose in pulling into the parking area and stopping near the diesel tractor was to provoke an argument or fight with Denver Cross, driver of the diesel tractor, for having turned left in front of them. As soon as Pickering stopped his pickup truck in the position heretofore mentioned, he and Nash got out, and at about the same time Denver Cross and Roy Cross climbed out of the diesel tractor. Pickering and Nash planned on engaging Denver Cross and Roy Cross in

what Nash described as a "one-on-one" fight. After an angry exchange of words, but before a fight erupted, two more adults climbed out of the diesel tractor. Pickering and Nash, seeing that they were outnumbered, wanted no part of a fight under the circumstances and got back into the pickup truck as if to leave. Roy Cross remained outside the diesel tractor, standing near the left front of the pickup truck. Denver Cross and the other two adults climbed back into the diesel tractor. Instead of leaving, Pickering backed his pickup truck, stopped, and then rapidly accelerated forward toward Roy Cross who managed to get out of the way and escape injury. On this foray the pickup truck, with Pickering at the wheel, missed Roy Cross and struck the left front wheel of the diesel tractor. The pickup truck then backed up again. At this juncture, Denver Cross and the other two adults got back out of the diesel tractor. Denver Cross positioned himself in the vicinity of the left front wheel of the diesel tractor. Pickering, once again, rapidly accelerated the pickup truck and drove towards Roy Cross and Denver Cross. On this second foray, Roy Cross was thrown upon the hood of the pickup truck and Denver Cross was struck by the front end of the pickup truck and pinned against the chain link fence. Denver Cross sustained injuries resulting in his instant death. Pickering immediately backed his pickup truck, turned around, and left the scene.

Pickering was later apprehended and taken into custody. A charge of second degree murder was filed against Pickering which, as a result of plea bargaining, was reduced to manslaughter in return for a plea of guilty by Pickering.

The trial court summed up its findings of fact as follows: "The Court further finds from all of the credible evidence in this case that defendant Pickering was aware of the presence of Roy Cross and Denver Cross in front of his pickup at the time he accelerated forward striking them, and that his acts and conduct were deliberate and intentional; that he did in fact intend to strike them and cause them to suffer personal injuries, and that the resulting injuries to Roy Cross

and Denver Cross could have been and were expected, and were therefore intended as the result of such conduct on the part of Pickering. Such actions are therefore not an 'occurrence' within the meaning of the insuring clause of plaintiff's policy."

The following conclusions of law were drawn by the trial court: (1) "[t]hat defendant Pickering used his pickup truck intentionally to inflict personal damages on Roy Cross and Denver Cross"; (2) "[t]hat the injuries to Roy Cross and death to Denver Cross were either expected or intended from the standpoint of defendant Pickering (Plaintiff's insured)"; and (3) "[t]hat the resulting injury to Roy Cross and death of Denver Cross was not an 'occurrence' as that term is defined in the policy of insurance issued by plaintiff, and plaintiff is not obligated to afford liability coverage to defendant Pickering."

The judgment rendered by the trial court declared: (1) "[t]hat the policy issued by plaintiff [Exchange] does not afford liability coverage to defendant Edward Pickering for his acts in causing injuries to Roy Cross and injury and death to Denver Cross"; (2) "[t]hat plaintiff [Exchange] is not obligated to defend Edward Pickering in Case Number CV79–1084 wherein Nelda Cross is plaintiff, now pending in the Jackson County Circuit Court, or to defend Edward Pickering in any action that may be filed against him by Roy Cross for injuries and damages sustained by him"; and (3) "[t]hat plaintiff [Exchange] is not obligated to pay or satisfy any judgment obtained by either Nelda Cross or Roy Cross against Edward Pickering".

Appellant takes an implacable stand on appeal—that Pickering "did not expect or intend to cause injury to anyone and therefore the death of Denver Cross was an 'occurrence' as that term is defined in plaintiff's [Exchange's] policy of insurance." No claim is laid by appellant that the policy definition of "occurrence" as used in the insuring clause was ambiguous. She pursues a pragmatic course by bifurcately arguing (1) that the trial court indulged in

speculation in finding and concluding that Pickering knew of the presence of Denver Cross in front of the pickup truck and intentionally struck him, and (2) the definitional language "neither expected nor intended from the standpoint of the insured" bespeaks of a subjective state of mind of which there was a total lack of evidence. It is patent that appellant predicates her right to appellate relief on a commingled legal-factual basis, review of which comes within the perimetrical scope of *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976).

From a factual perspective, appellant, in treating the evidence, has succumbed to the common temptation of selectivity—emphasizing those facts which favor her and ignoring those which do not. Suffice it to say, the evidence presented to the trial court weighed heavily in favor of Exchange and was neither speculatory nor in a state of equipoise.

■ From a legal perspective, the weight of the evidence vis-a-vis extant case law demonstrates that the trial court did not erroneously declare or erroneously apply the law. In *Subscribers At Auto. Club, Etc. v. Kennison,* 549 S.W.2d 587 (Mo.App.1977), the Missouri Court of Appeals, Eastern District, was confronted with a contention by an assured that "intentionally", as used in an exclusionary clause, entailed a subjective state of mind which was susceptible of proof only by an admission of specific intent on the part of assured. In rejecting assured's claim of a subjective standard of intent, the court held: "[A]n admission of specific intent is not the only way to show intent to cause harm; it can be inferred from facts and circumstances surrounding an act.... One is presumed to intend the natural and probable consequences of his acts and conduct. *Camp v. John Hancock Mut. Life Ins. Co.,* 165 S.W.2d 277, 281[5] (Mo.App.1942). When an intentional act results in injuries which are the natural and probable consequences of the act, the injuries as well as the act are intentional. *Rankin v. Farmer's Elevator Mutual Ins. Co.,* 393 F.2d 718 (10th Cir.1968)." *Subscribers At Auto. Club, Etc. v. Kennison, supra,* at

591. More recently, this court in *Hanover Ins. Co. v. Newcomer,* 585 S.W.2d 285 (Mo. App.1979), dealt with an exclusionary clause in a homeowner's policy that liability coverage did not extend "to bodily injury or property damage which is *either expected or intended from the standpoint of the Insured."* (Emphasis added.) The apical issue was whether the existence or nonexistence of coverage turned on application of an objective or subjective standard for determining whether an assured's act or conduct was expected or intended. Acknowledging that inclusion of "expected" in the policy language added another dimension to "intentional" which came under judicial scrutiny in *Subscribers At Auto. Club, Etc., v. Kennison, supra,* the court cited with approval and relied upon *Continental Western Ins. Co. v. Toal,* 309 Minn. 169, 244 N.W.2d 121 (1976): "That the act of an insured need not be expressly intentional, but can be inferred, see *Continental Western Ins. Co. v. Toal,* 309 Minn. 169, 177, 244 N.W.2d 121, 125 (1976), wherein the court declared, 'an injury is "expected or intended" from the standpoint of the insured if a reason for an insured's act is to inflict bodily injury or "when the character of the act is such that an intention to inflict an injury can be inferred" as a matter of law.' "

■ Probing one's state of mind is an elusive task at best. Supplanting an objective standard with a subjective standard for determining whether the act or conduct of an insured is "intentional" or "expected or intended" for purposes of assessing coverage would emasculate apposite policy provisions by making it impossible to preclude coverage for intentional acts or conduct absent admissions by insureds of a specific intent to harm or injure. Human nature augers against any viable expectation of such admissions.

■ Appellant tangentially argues that acceptance of Pickering's guilty plea to the reduced charge of manslaughter in the criminal action, under the doctrine of estoppel by verdict, conclusively established that Pickering did not intentionally inflict injury on Denver Cross, deceased, as intent is not

an element of manslaughter committed by means of culpable negligence. This argument is spurious for a number of reasons. First and foremost, Exchange was not a party to the criminal action nor was Pickering's guilty plea responsive to plea bargaining indicative that lack of intent was a fact actually decided and necessarily determined. See *Abeles v. Wurdack,* 285 S.W.2d 544, 546 (Mo.1956). Parenthetically, in the context of manslaughter perpetrated by culpable negligence, "a proper definition of culpable negligence should include 'the element of reckless disregard of the consequences of the act or the omission from which the criminal intent may properly be inferred.'" *State v. Tatum,* 414 S.W.2d 566, 568 (Mo.1967).

The judgment rendered by the trial court was neither against the weight of the evidence nor an erroneous declaration or application of the law. Under the precept of *Murphy v. Carron, supra,* it stands affirmed.

Judgment affirmed.

All concur.