**FARM BUREAU TOWN & COUNTRY INSURANCE COMPANY OF MISSOURI, Respondent,**

v.

**Billy J. TURNBO, et al., Appellant,**

and

**William H. Humphrey, Respondent.**

No. 51388.

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 15, 1987.

Motion for Rehearing and/or Transfer Denied Oct. 21, 1987.

Application to Transfer Denied Dec. 15, 1987.

Nancy Quackenbush, St. Ann, for appellant.

Ronald C. Willenbrock, St. Louis, for respondent.

SATZ, Presiding Judge.

This is an appeal by defendant, Billy J. Turnbo (Turnbo), from a summary judgment entered in favor of plaintiff, Farm Bureau Town & Country Insurance Company (Farm Bureau). We affirm.

Turnbo and a William Humphrey (Humphrey) had a fight. By information, the state charged Turnbo with "the Class A misdemeanor of assault in the third degree". The state alleged Turnbo "recklessly caused physical injury to William Humphrey by striking him".[1] Turnbo pled guilty to this charge.

Humphrey then sued Turnbo in tort for personal injuries, seeking actual and punitive damages. Humphrey alleged:

[Turnbo] grabbed [Humphrey] by the throat and proceeded to choke [Humphrey]. After [they] were separated by onlookers, [Turnbo] attacked [Humphrey] again, repeatedly hitting [Humphrey] about various parts of his body and pulling a large lock of hair out of [Humphrey's] head.

---

1. "Recklessly" is defined in § 562.016.4 RSMo 1979 of our Criminal Code.

A person "acts recklessly" ... when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.

As a result ..., [Humphrey] was caused to suffer numerous physical injuries, including lacerations and bruises on and about his body.

[Turnbo's] acts ... were reckless, willful, wanton, and with intentional disregard of the safety of [Humphrey]....

Turnbo had purchased a general liability policy from Farm Bureau, and Turnbo requested Farm Bureau to defend him against Humphrey's action under the terms of the policy. Rather than defend Turnbo, Farm Bureau brought this present action—an action for declaratory judgment, requesting the trial court declare Farm Bureau had no duty to defend Turnbo. In its petition, Farm Bureau alleged its policy, attached to the petition, specifically excluded coverage of Turnbo's alleged "willful and intentional conduct" and, in turn, excluded coverage of the alleged resulting personal injury to Humphrey.

Subsequently, Farm Bureau filed its motion for summary judgment. To support the motion, Farm Bureau filed an affidavit of Humphrey describing the fight, Turnbo's answers to interrogatories and to requests for admissions, in addition to the documents previously referred to. In response, Turnbo filed his affidavit describing the fight. Based upon the "affidavits ..., the pleadings, and the information and plea [of Turnbo]", the trial court granted Farm Bureau's motion. This appeal followed.

■ At times, it is said the liability insurer's duty to defend its insured is determined by the provisions of the liability policy and the allegations of the petition filed against the insured. *See, e.g., Butters v. City of Independence,* 513 S.W.2d 418, 424 (Mo.1974). The petition, however, is not controlling when facts known or which reasonably should have been known to the insurer establish the existence or nonexistence of the duty to defend. *See, e.g., Travelers Ins. Co. v. Cole,* 631 S.W.2d 661, 665 (Mo.App.1982); *Hawkeye-Security Ins. Co. v. Iowa Nat'l. Mut. Ins. Co.,* 567 S.W.2d 719, 720–721 (Mo.App.1978). On the present record, the facts known or which reasonably should have been known by

Farm Bureau do not change the issue created by the provisions of the policy and the allegations of the petition filed against Turnbo, that issue being whether the provisions of Farm Bureau's policy require it to defend Turnbo against allegations he caused Humphrey's injuries by "reckless, willful and wanton" conduct.

According to the provisions of its policy, Farm Bureau agreed "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury ..., ..., caused by an occurrence". " 'Occurrence' means an accident, ..., which results, ..., in bodily injury...." This coverage, however, "does not apply to bodily injury ... which is either expected or intended from the standpoint of the insured". Farm Bureau, then, must defend Turnbo against an occurrence which is an (1) accident (2) resulting in bodily injury (3) neither expected or intended by Turnbo. Neither Farm Bureau nor Turnbo question whether the fight between Turnbo and Humphrey was an accident. Thus, the question here, as it was in the trial court, is whether Turnbo's alleged "reckless, willful and wanton" conduct would cause an injury which would neither "be expected or intended" by him. The answer to this question obviously depends upon the definitions given the terms "reckless, willful and wanton" and "expected and intended."

■ Our courts, no different than courts in other jurisdictions, have wrestled with the definitional differences of the tortious terms "reckless, willful and wanton". Although we have neither formally nor explicitly adopted the Restatement's definitions of these terms, we have both explicitly relied upon those definitions or similar ones and impliedly accepted them. *See, e.g., Crull v. Gleb,* 382 S.W.2d 17, 21–22. (Mo.App.1964); *See also, Mclanahan v. St. Louis Public Service Co.,* 363 Mo. 500, 251 S.W.2d 704, 708 (banc 1952).

The Restatement spreads its definitions of tortious conduct along a spectrum of acts and consequences. At one end of the spectrum is a person's intentional conduct, at the other end, his negligent conduct. A

person intends an act if he desires to cause the consequences of his act or believes the consequences are *substantially certain* to result. Restatement (Second) of Torts § 8A (1965).[2] As the certainty of the consequences decreases, the characterization of the person's mental state shifts to reckless, Restatement, § 8A, Comment b, then to negligent. *Id.* Thus, a person is reckless, if he realizes or, from the facts which he knows, should realize there is a *strong probability* that harm may result, even though he hopes or expects his conduct will prove harmless. Restatement § 500. To commit an intentional tort, the person must not only commit the act, he must also intend to produce the resulting harm. Restatement § 870, Comment b. To be reckless, however, the person intends the act, but does not intend to cause the harm that results, Restatement, § 500, Comment f. "[A] strong probability is a different thing from the substantial certainty without which [a person] cannot be said to intend the harm in which his act results." *Id.*

Recklessness differs from negligence also in kind. A person is negligent, if his inadvertence, incompetence, unskillfulness or failure to take precautions precludes him from adequately coping with a possible or probable future emergency. Restatement, § 500, Comment g. To be reckless, a person makes a conscious choice of his course of action, "either with knowledge of the serious danger to others involved in it or with knowledge of the facts which would disclose the danger to any reasonable man." *Id.* Recklessness also differs from that negligence which consists of intentionally doing an act with knowledge it contains a risk of harm to others. To be reckless, a person must "recognize that his conduct involves a risk substantially greater in amount than that which is necessary to make his conduct negligent. [The difference between reckless conduct and negligent conduct is a difference in degree of risk], but this difference of degree is so marked as to amount substantially to a difference in kind." *Id.*

Humphrey, however, alleged that Turnbo was not only "reckless," he was also "willful" and "wanton". The addition of the latter two terms does not change the characterization of the conduct from "reckless." More often than not, "reckless" is used together with "willful" and "wanton" to describe legally significant conduct. This is nothing more than a manifestation of the legal mind's long lasting love affair with redundancy. These three terms may differ slightly in definition, but, in practice, they have been treated as meaning the same thing, "or at least as coming out of the same exit." Prosser and Keeton, *Torts,* § 34 at 212–214 (5th ed. 1984); Restatement § 500; *see also, Crull v. Gleb, supra.* In short, Humphrey alleged that Turnbo injured Humphrey by "reckless" conduct, which, by definition, means Turnbo allegedly realized or should have realized there was a strong probability his conduct would cause the injury to Humphrey.

▮ Since Farm Bureau is not obligated to defend Turnbo if Hunphrey's "bodily injury" was either "expected or intended from the standpoint of [Turnbo]", the question then becomes whether "expected" adds another dimension to "intended" and whether "expected" contemplates a "strong probability" that certain consequences will result.

With the legal profession's claim to plain speaking and clear understanding, one would think there would be a commonly agreed to definition of "expected and intended" as used in the exclusion clause. This is not so. Some courts find the terms ambiguous, when construing the exclusion clause, *Insurance—Intended or Expected Injury,* 31 ALR 4th 957, § 3[a] (1984); other courts find them unambiguous. *Id.,* § 3[b]. Some courts have said the terms are synonymous, *Id.* § 4[a]; other courts have said they are not synonymous. *Id.,* § 4[b].

Our colleagues in the Western District, in dicta at least, appear to believe the

---

**2.** All citations to the Restatement are to Restatement (Second) of Torts (1965) unless otherwise stated.

terms, as used in the exclusionary clause, are synonymous. *See, Hanover Ins. Co. v. Newcomer*, 585 S.W.2d 285, 288 (Mo.App. 1979). In *Hanover*, the Court rejected the idea that "expected and intended" are not synonymous as used in the exclusionary clause and, in turn, rejected the corollary that "a different degree is necessary for [intent and expected] ... a greater degree of proof being required to establish intent than to establish expectation". *Id.* at 288. If this idea were adopted, the Court stated

it would introduce the concept of foreseeability from a finding that an injury was one which could be expected. The net effect would be to inject or implant an intent to cause harm into exclusionary clauses invoking the terms expected or intended. The foreseeability would then continue to be an element of ordinary negligence without the concurring requirement of an intentional act, whether expressed specifically or inferred from the nature or character of the act. *Id.* at 288.

If we followed this reasoning here, we would find "expect and intend", as used in Farm Bureau's exclusionary clause, to be synonymous and, therefore, would find Turnbo's alleged "reckless" conduct was not excluded from coverage.

We choose not to follow the dicta of the Western District. The exclusion clause here is now in general use throughout the insurance business. It was part of a "major revision" of policy language affording general coverage for personal liability. Prior to 1966, the language employed to achieve a similar exclusion was to exclude from coverage "bodily injury ... caused intentionally by or at the direction of the insured." *See, e.g., Patrons-Oxford Mut. Ins. Co. v. Dodge*, 426 A.2d 888, 890 (Me. 1981). The courts gave a narrow interpretation of this exclusionary language by interpreting it from the viewpoint of the victim rather than from the viewpoint of the insured. The purpose of the change in the language was to explicitly require the courts to view the bodily injury from the standpoint of the insured. *Id.* at 890–891. In achieving this purpose by using the language—bodily injury which is either expected or intended from the standpoint of the insured—the insurers were not equating "expected" and "intended" and making them synonymous. If they were to be synonymous, what purpose is served by including both within the exclusionary clause. The two words simply apply to situations which differ from each other in that a different degree of proof is required to establish intent than to establish expectation. *See Farmer's Automobile Ins. Assoc. v. Medina*, 29 Ill.App.3d 224, 329 N.E. 2d 430, 436 (1975) (concurring opinion).

Moreover, no damage is done to plain English or to the reasonable expectations of the insured to find there is a difference between "expect" and "intend" and to find this difference is simply a difference in the degree of probability. "Intend" means the insured desires to cause the consequences of his act or believes the consequences are substantially certain to result. "Expect" means the insured realized or should have realized there was a strong probability the consequences in question would result from his acts. *See, e.g. City of Carter Lake v. Aetna Cas. and Sur.*, 604 F.2d 1052, 1058–1059 (8th Cir.1979); *Auto-Owners Ins. Co. v. Jensen*, 667 F.2d 714, 719 (8th Cir.1981). This definition of "expect" squares with the legal definition of "reckless", and, thus, the alleged acts of Turnbo would be excluded from coverages.

This result is consistent with the purpose of the type of insurance coverage in question. The liability policy is designed to protect the insured from fortuitous injury caused by his actions. If the injury occurs because of carelessness of the insured, he reasonably expects the injury to be covered. "On the other hand, the insurer is in the business of distributing losses due to such injuries among a large number of policyholders. It is able to properly set premiums and supply coverage only if those losses are uncertain from the standpoint of any single policyholder. If the single insured is allowed through intentional or reckless acts to consciously control the risks covered by the policy, a central concept of insurance is violated." *Bitumi-*

*nous Cas. Corp. v. Bartlett,* 307 Minn. 72, 240 N.W.2d 310, 313 (1976).

Judgment affirmed.

CRIST and KELLY, JJ., concur.