**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Appellant,**

v.

**Charles PACCHETTI, Jon W. Anderson, and Claudette Potthoff, Respondents.**

No. 73041.

Supreme Court of Missouri, En Banc.

May 3, 1991.

Rehearing Denied June 11, 1991.

## 370

B.H. Clampett, Michael J. Cordonnier, Springfield, for appellant.

Bart L. Strother, Kansas City, W. Gary Drover, Camdenton, for respondents.

BLACKMAR, Chief Justice.

On June 29, 1984, Derek Anderson, 16 years old, was visiting in the home of Charles Pacchetti. Pacchetti asked Derek to join him in his bedroom and then, after showing him some guns, asked "Have you ever heard of anybody opening on cocaine?" When Derek said, "No" Pacchetti showed him a blue plastic bottle and said "This stuff is almost pure. It doesn't do anything to me." He then injected Derek with cocaine, or assisted him in injecting cocaine, or furnished him cocaine knowing that he proposed to inject it. Derek collapsed and soon died from an overdose of cocaine. Derek's parents claimed damages from Pacchetti, who was covered by a homeowner's policy issued by American Family Mutual Insurance Company. The policy insured Pacchetti against liability for personal injury and property damage for which he was legally responsible, but excluded bodily injury "which is expected or intended by any insured."

The insurer brought a declaratory judgment action contending that the misfortune which befell Derek was within the exclusion, so that it was not covered by insurance. Pacchetti and Derek's parents were named as defendants.

The trial court entered judgment for the defendants, concluding that the claim was within the coverage of the policy. The court entered the following findings (labeled "Conclusions of Law"): [1]

5. There is insufficient evidence that Charles Pacchetti intended or expected to cause the bodily injury (death) of Derek Anderson and insufficient evidence to *infer* that he intended or expected to cause injury to Derek Anderson.

6. The Court cannot say as a matter of law that because cocaine caused the harm to Derek Anderson, intent to harm can be inferred or established from the instrumentality itself.

7. The surrounding circumstances of the incident are insufficient to infer intent to harm or to expect harm to occur.

The insurance company appealed. The court of appeals reversed, concluding that "as a matter of law, the injury to Derek was expected." We granted transfer because of the widespread use of an exclusion for injuries intended or expected in liability insurance policies. We affirm the judgment of the trial court, finding that the injury was within the liability coverage of the policy. The burden is on the insurer to establish that an exclusion bars coverage. *Farmers and Merchants Ins. Co. v. Cologna*, 736 S.W.2d 559, 562 (Mo.App.1987).

It may be argued that by using two words, "intended" and "expected," different meanings were indicated.[2] We could

---

1. The labeling is without significance. *Steelman v. Holford*, 765 S.W.2d 372, 377 (Mo.App. 1989).

2. *See Hanover Insurance Company v. Newcomer*, 585 S.W.2d 285 (Mo.App.1979) and *Truck Insur-*

*ance Exchange v. Pickering*, 642 S.W.2d 113 (Mo.App.1982), for general discussions distinguishing levels of proof required for "expected" and "intended" injuries.

note many examples of legal parlance in which studied redundancies are used, but there are many suggestions of a shade of difference in the meaning of the two terms. Whether the insured expected or intended injury, however, is essentially a question of fact.

The insurer places strong reliance on *Hanover Insurance Company v. Newcomer*, 585 S.W.2d 285 (Mo.App.1979), in which the insured flourished a ceremonial machete and struck a woman with whom he had been arguing. Although the insured claimed that he had no purpose of injuring the claimant, the trial court found that the resulting injury was expected or intended and that there was no coverage. The court of appeals affirmed this holding. The case does not completely answer the problem now before us, however, because there the trial court's finding was in favor of the insurer.

In *Steelman v. Holford*, 765 S.W.2d 372 (Mo.App.1989), an instructive case on most of the points involved here, the insured fired a shot out the window of a moving truck, and the plaintiff was injured. There was no showing, however, that the insured fired the shot with the purpose of injuring the plaintiff or anybody else. The court of appeals concluded that there was a fact question as to whether the injury was expected or intended, *Id.* at 377, and affirmed the trial court's finding of coverage.

The insurer points to the federal and state statutes which show consensus about the harmful effects of cocaine.[3] We take judicial notice of those statutes. The insurer also offered the testimony of an expert witness on the harmful effects of cocaine. The trial court held that this deposition was not admissible. We have it in the record and of course are able to note its contents to the extent that they bear on the issue before us. The trial judge also had recourse to the deposition, and it seems very

unlikely that she would have altered her clear and detailed findings and conclusions on account of the information in the deposition. The insurer, furthermore, does not automatically bring the exclusion into play simply by showing that cocaine is harmful, or that the insured's acts in providing it to Derek were intentional. Many intentional acts are within the coverage of liability insurance policies, even with this standard exclusion.[4] It must be shown not only that the insured intended the acts causing the injury, but that injury was intended or expected from these acts. *See Steelman v. Holford*, 765 S.W.2d at 377.

We also reject the suggestion that a showing that the insured acted recklessly compels a finding that injury was expected. Although recklessness is sometimes the legal equivalent of intention, liability insurance would be of scant value if coverage were to turn on a jury's finding that the insured acted recklessly rather than negligently. *Steelman v. Holford, supra,* expressly held that a showing of reckless behavior does not bring the standard exclusion into effect.

It remains for the insurer to show that this particular insured expected or intended the result which occurred. The record does not compel a finding that he did. It is just as likely that Pacchetti, in his perverted way, might have thought that Derek would derive some transitory pleasure or benefit from what apparently would be his initial experience with cocaine.

What Pacchetti intended or expected is a question of fact for the trial court. This holding is supported by our own case law, and we do not find it necessary to discuss the numerous cases from other states. In some, the insured's act could only cause injury even though the resulting injury was more extensive than expected.[5] In others, the trial court's findings favored the exclu-

---

3. *See e.g.,* 21 U.S.C. § 812(c)(a)(4) and § 195.017.4(1)(d), RSMo 1986, defining cocaine as a Schedule II drug with high potential for abuse and possible severe psychological or physical dependence. *See also* 21 U.S.C. § 812(b)(2) and § 195.017.3, RSMo 1986.

4. *See e.g., Curtain v. Aldrich,* 589 S.W.2d 61 (Mo.App.1979).

5. *See, e.g., Western National Assurance Co. v. Hecker,* 43 Wash.App. 816, 719 P.2d 954 (1986).

sion.[6] We cannot say that the trial judge's findings and conclusions are not supported by the evidence.

The order appealed from is affirmed.

RENDLEN, HIGGINS and COVINGTON, JJ., concur.

ULRICH, Special Judge, dissents in separate opinion filed.

ROBERTSON and HOLSTEIN, JJ., dissent and concur in dissenting opinion of ULRICH, Special Judge.

BILLINGS, J., not sitting.

ULRICH, Special Judge, dissenting.

I respectfully dissent. American Family presented sufficient evidence that Mr. Pacchetti intended to cause Derek's death as a matter of law thereby excluding from coverage the injury as "expected or intended."

Derek Anderson was a guest in Mr. Pacchetti's home when Mr. Pacchetti provided him with the cocaine that moments later caused the boy's death. Prior to providing Derek with cocaine, Mr. Pacchetti asked him, "Have you ever heard of anybody opening on cocaine?" Derek said, "No." Mr. Pacchetti showed Derek a blue plastic bottle and said, "This stuff is almost pure. It doesn't do anything to me." This evidence implies that Mr. Pacchetti believed that Derek had never used cocaine before. After using the "almost pure" drug, Derek apparently fell to the floor, remained motionless, face up, with his eyes open. The blue vial laid at Derek's feet. The youth never regained consciousness.

The language in Mr. Pacchetti's home owners' insurance policy with American Family excludes coverage for bodily injuries which are "expected or intended" by the insured. Unequivocal language in an insurance policy is to be given its plain meaning notwithstanding the fact that the language appears in a restrictive provision of the policy. *Harrison v. MFA Mut. Ins. Co.,* 607 S.W.2d 137, 142 (Mo. banc 1980). Missouri courts have determined that an exclusion in an insurance policy denying coverage for "expected or intended" injuries encompasses the insured's intentional acts. *Western Indemnity Co. v. Alley,* 740 S.W.2d 372, 374 (Mo.App.1987); *Travelers Ins. Co. v. Cole,* 631 S.W.2d 661, 664 (Mo.App.1982).

When determining whether injuries are intentional for purposes of insurance coverage, courts must examine the quality of the results rather than the causes. *White v. Smith,* 440 S.W.2d 497, 507 (Mo.App.1969). Thus, while the term intentional contemplates deliberately and consciously intending the acts themselves, intentional, as used in insurance policies, also requires a showing that the actor intended that harm result from the acts. *Crull v. Gleb,* 382 S.W.2d 17, 21 (Mo.App.1964). An insured commits an intentional act when he acts with the specific intent to cause harm to a third person or when the insured's intent to harm is inferred as a matter of law from the nature or character of the act. *Cole,* 631 S.W.2d at 664; *Hanover Ins. Co. v. Newcomer,* 585 S.W.2d 285, 289 (Mo.App. 1979).

Cocaine is a toxic drug that harms the human body. The United States Congress and Missouri General Assembly define cocaine as a narcotic drug, 21 U.S.C. § 802(17)(D) (1988); § 195.010(27)(c), RSMo Supp.1990; and as a schedule II drug, 21 U.S.C. § 812(c)(a)(4) (1988); § 195.017.4(1)(d), RSMo Supp.1990. Schedule II drugs are defined as drugs having a high potential for abuse and possibly leading to severe psychological or physical dependence. 21 U.S.C. § 812(b)(2); § 195.017.3. Additionally, Congress has determined that drugs such as cocaine have a substantial and detrimental effect on the health and general welfare of the American people. 21 U.S.C. § 801(2) (1988). Thus, cocaine is characterized as a dangerous drug by both the federal and state legislatures.

The evidence demonstrates, and the trial court found, that Mr. Pacchetti deliberately and consciously intended to either inject

---

**6.** See e.g., *Poston v. U.S. Fidelity & Guarantee Co.,* 107 Wis.2d 215, 320 N.W.2d 9 (App.1982) and *Linebaugh v. Berdish,* 144 Mich.App. 750, 376 N.W.2d 400 (1985).

Derek with cocaine, assist Derek in injecting himself with cocaine, or provide Derek with cocaine knowing that Derek would inject himself with the drug. From the nature and character of Mr. Pacchetti's actions, this Court is able to infer as a matter of law Mr. Pacchetti's intent that a needle puncture Derek's arm and that the dangerous drug cocaine, in its nearly pure form, contaminate and injure Derek's body. While the evidence reveals Mr. Pacchetti's intent that Derek be harmed, the evidence does not demonstrate that Mr. Pacchetti intended Derek's death.

The question now is whether Derek's death was intentional as a matter of law where Mr. Pacchetti intended some harm to Derek but not the harm which actually resulted. The Supreme Court of Wisconsin addressed a similar issue in on *Pachucki v. Republic Ins. Co.*, 89 Wis.2d 703, 278 N.W.2d 898 (1979). The plaintiff in *Pachucki* suffered an injury to the cornea of his right eye when struck by a flying metal object that one of the defendants shot at him with a rubber band. *Id.* 278 N.W.2d at 899. One of the defendants admitted that he intended to strike plaintiff's body but denied any intent to hit plaintiff in his eye. *Id.* at 900. The insurers denied liability for plaintiff's injury under a clause in defendants' policies excluding coverage for "bodily injury or property damage which is either expected or intended from the standpoint of the insured." *Id.* Wisconsin's highest court explained that the majority view in the United States provides that the insured must have intended the act and intended to cause some kind of injury for coverage to be excluded under this language. *Id.* at 901. The court further explained, "Once it is found that harm was intended, it is immaterial that the actual harm caused is of a different character or magnitude than that intended." *Id.*

The Supreme Court of Minnesota also considered a similar issue in *Fireman's Fund Ins. Co. v. Hill*, 314 N.W.2d 834 (1982). In *Hill*, the insured sexually molested a child but denied any intent to cause the child's mental pain and anguish. *Id.* at 835. The insured's policy excluded coverage for "bodily injury which is either expected or intended from the standpoint of the insured." *Id.* The Supreme Court of Minnesota held that, "[t]o be excluded from coverage, a person must have specifically intended to cause injury, although intent to injure will be found even if the actual injury is different in kind or more severe than that intended." *Id.*

Finally, the Supreme Court of Nebraska considered the issue in *State Farm Fire & Cas. Co. v. Muth*, 190 Neb. 248, 272, 207 N.W.2d 364 (1973). In *Muth*, the insured fired a B–B gun from a slowly moving vehicle intending to scare somebody but resulting in claimant's eye injury and subsequent loss of sight. *Id.* 207 N.W.2d at 365. The insured's insurance policy provided that coverage "does not apply … to bodily injury or property damage which is either expected or intended from the standpoint of the insured." *Id.* Nebraska's highest court held:

> [A]n injury is either expected or intended if the insured acted with the specific intent to cause harm to a third party. It seems to us to be immaterial whether the injury which results was specifically intended, *i.e.*, the exclusion would apply even though the injury is different from that intended or anticipated.

*Id.* at 366.

The rule of law discussed in these cases has also been adopted in a number of other jurisdictions. *See Parkinson v. Farmers Ins. Co.*, 122 Ariz. 343, 594 P.2d 1039 (Ct. App.1979); *Butler v. Behaeghe*, 37 Colo. App. 282, 548 P.2d 934 (1976); *Hartford Fire Ins. Co. v. Spreen*, 343 So.2d 649 (Fla.Dist.Ct.App.1977); *Antill v. State Farm Fire & Cas. Co.*, 178 Ga.App. 659, 344 S.E.2d 480 (1986); *Farmers Ins. Group v. Sessions*, 100 Idaho 914, 607 P.2d 422 (1980); *Mid America Fire v. Smith*, 109 Ill.App.3d 1121, 65 Ill.Dec. 634, 441 N.E.2d 949 (1982); *Home Ins. Co. v. Neilsen*, 165 Ind.App. 445, 332 N.E.2d 240 (1975); *Tal v. Franklin Mut. Ins. Co.*, 172 N.J.Super. 112, 410 A.2d 1194 (1980); *Graves v. Liberty Mut. Fire Ins. Co.*, 745 S.W.2d 282 (Tenn.Ct.App.1987).

Although this Court has never expressly addressed the rule adopted in these other jurisdictions, the rule is not inconsistent with the results reached in several Missouri cases. For example, in *Truck Ins. Exch. v. Pickering*, 642 S.W.2d 113 (Mo.App.1982), the insured intentionally drove his pickup truck toward decedent and struck him causing his immediate death. *Id.* at 115. The insured's policy provided coverage for injuries which were "neither expected nor intended" by the insured. *Id.* at 114. On appeal, the decedent's family contended that the insured did not intend the decedent's death. *Id.* at 115. However, the Western District determined that since the insured's acts were intentional and resulted in injuries which were the natural and probable consequences of the acts, both the acts and the injuries, including decedent's death, were considered intentional and excluded from coverage under the policy. *Id.* at 116. *See also Shelter Mut. Ins. Co. v. Parrish*, 659 S.W.2d 315 (Mo.App.1983); *Subscribers at Auto. Club Inter–Insurance Exch. v. Kennison*, 549 S.W.2d 587 (Mo.App.1977); *Farmers Alliance Mut. Ins. Co. v. Reed*, 530 S.W.2d 470 (Mo.App. 1975).

In *Steelman v. Holford*, 765 S.W.2d 372 (Mo.App.1989), the court also considered an insurance policy excluding coverage for "expected or intended" injuries. *Id.* at 373. In *Steelman*, plaintiff was shot by defendants as they intentionally fired a rifle from their automobile. *Id.* at 377. There was no evidence that either of the shooters intentionally shot into the truck that the plaintiff was driving. *Id.* at 376. The Southern District held that plaintiff's injuries were not "expected or intended" because there was no evidence that defendants intended any injury to plaintiff or anyone else. *Id.*

I would adopt the rule expressed in other jurisdictions that when the insured commits an intentional act intending to harm another person, the resulting harm to the person is intentional though more severe than that originally contemplated by the insured. Other jurisdictions adopting this rule also require that the resulting harm be the "ordinary consequences" of the insured's voluntary actions. *See Behaeghe*, 548 P.2d at 939. The wisdom of the restriction is recognized and I would adopt it also.

Under this rule, the fact that Mr. Pacchetti did not specifically intend Derek Anderson's death is immaterial for the purposes of interpreting the clause in his policy excluding coverage for "expended or intended" injuries. Mr. Pacchetti, intentionally either injected Derek with cocaine, assisted Derek in injecting himself with cocaine, or provided Derek with cocaine knowing he would inject himself. Through these actions, Mr. Pacchetti intended to harm Derek by puncturing his arm with a needle [or facilitating it], contaminating his bloodstream with a potentially toxic drug and intoxicating him. Thus, Derek's resulting death, though more severe than the harm Mr. Pacchetti intended, was the ordinary consequence of an intravenous injection of nearly pure cocaine and, therefore, intentional. I would find that the trial court erroneously declared the law in reaching its conclusion that Derek's death was not "expected or intended," and reverse the trial court's judgment.