GENERAL MOTORS CORPORATION, Appellant,

v.

CITY OF KANSAS CITY, Missouri, Respondent.

Nos. WD 46246, WD 46526.

Missouri Court of Appeals, Western District.

Jan. 10, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 28, 1995.

Application to Transfer Denied April 25, 1995.

Paul S. Kelly, Gage and Tucker, Kansas City, for appellant.

George L. Debitetto, Asst. City Atty., Kansas City, for respondent.

Before ULRICH, P.J., and BRECKENRIDGE and HANNA, JJ.

BRECKENRIDGE, Judge.

General Motors Corporation (GM) appeals from the trial court's order granting summary judgment in favor of the City of Kansas City (City) on GM's claims seeking recovery of occupation license taxes which GM alleges were illegally assessed by Kansas City against GM. GM raises five points on appeal arguing that the trial court erred in granting the City summary judgment in that: the City's occupation license tax, on its face and as applied, violates the Commerce Clause of the U.S. Constitution; the occupation license tax violates Missouri case law and the uniformity clause of the Missouri constitution; and the wrong tax rate schedule was applied to GM. This court does not reach GM's points of alleged error, however, because GM's recovery is barred by its failure to make or file a written protest at the times it paid the license taxes as required by § 139.031, RSMo 1986.[1] The trial court's grant of summary judgment is affirmed.

From 1928 to 1988, GM operated an automobile assembly facility, known as the Leeds Assembly Plant (Leeds), in Kansas City, Missouri. From 1984 through 1988, the time period pertinent to this case, Leeds assembled Oldsmobile Firenza, Buick Skyhawk and Chevrolet Cavalier automobiles. Leeds ceased operations in 1988.

While in operation, Leeds assembled automobiles by putting together component parts which were manufactured at other GM facilities or purchased from independent suppliers

and shipped to Leeds. Although some of the parts used by GM were manufactured in Kansas City, the greatest percentage of the parts used by Leeds were manufactured outside of Kansas City.[2] GM operated on a "transfer price" accounting system meaning that each component part or service was assigned a value based upon cost. The transfer price of a completed automobile consisted of the transfer price of all the component parts used in the automobile, plus the plant operating costs allocated to that vehicle. Leeds did not receive the sales proceeds from automobiles it assembled.

The City's occupation license tax was assessed under Chapter 21 of the Code of General Ordinances. The tax is to be computed on the basis of the annual gross receipts, business or commissions of all entities doing business in Kansas City. Section 21.35 states that annual gross receipts, gross annual business, and gross annual commissions shall be defined as follows:

... twelve (12) times the average monthly gross receipts, gross business, or gross commissions, from whatever source derived, from:

(1) All services performed.

(2) All goods, wares, merchandise, chattels and all other real and tangible personal property of every kind sold, leased or manufactured by the business in question and

(3) All commissions, fees, charges and compensation earned,

for the time during which any business in question shall have been conducted during the license period.

Kansas City, MO, Code § 21.35 (1977).

GM was granted an occupation license by the City under the classification of automobile manufacturer. The City computed and assessed GM's occupation license tax with respect to Leeds on the basis of the completed vehicles' transfer price reported by GM as

---

1. Section 139.031, RSMo 1986, was amended in 1989, but the modification occurred after the payment dates of GM's license taxes and the provisions amended do not impact the issues herein.

2. Approximately sixty-eight percent of the cost of the components incorporated into the finished automobiles at Leeds was derived from component parts manufactured by GM at plants located outside of Missouri.

its gross receipts for the years at issue. From 1985 through 1988, GM paid occupation license taxes to the City in the amount of approximately $3,330,000.

On December 29, 1989, GM filed suit against the City seeking recovery of the license taxes it paid from 1985 to 1988. GM's petition prayed for a judgment requiring the City to refund the license taxes GM has paid the City since January 1, 1985, with prejudgment interest thereon.

In response to GM's petition, the City filed an answer and a counterclaim seeking payment of additional taxes that the City claims are owed by GM. The City bases its claim on its audit of GM's books and records for the years 1985 through 1988. The City contends that this audit showed certain occupation license tax deficiencies resulting from GM's use of the transfer price in reporting gross receipts.

GM filed a motion for summary judgment and the City subsequently moved for summary judgment as well. After hearing oral arguments on the motions, the trial court granted the City's motion for summary judgment on all four counts of GM's petition. The court's judgment did not address the City's counterclaim, and it remains pending in the circuit court. Pursuant to Rule 74.01(b), the trial court entered a judgment determining that there was no just reason to delay appeal of the order granting summary judgment to the City. GM filed this appeal in a timely manner thereafter.

The appeal was originally entertained by this court. After the issuance of an opinion, the Supreme Court granted transfer. The Supreme Court subsequently transferred the case back to this court for reconsideration in light of *Armco Steel v. City of Kansas City*, 883 S.W.2d 3 (Mo. banc 1994).

The trial court's order of summary judgment will be affirmed on appeal if the reviewing court determines that the movant has a right to judgment as a matter of law and that no genuine issues of material fact exist. *Manor Square v. Heartthrob*, 854 S.W.2d 38, 41 (Mo.App.1993). This court, in reviewing the trial court's order of summary judgment, will consider the record in the light most favorable to the party against whom judgment was entered and afford that party all reasonable inferences which may be drawn from the evidence. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). The moving party bears the burden of proving that it is entitled to judgment as a matter of law and that no genuine issues of material fact exist. *Id.* at 378. An appellate court will affirm the trial court's award of summary judgment if the judgment is sustainable upon any theory within the scope of the pleadings, depositions, admissions and affidavits. *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 243–44 (Mo. banc 1984).

Prior to reaching GM's points raised on appeal, this court addresses the City's contention that § 139.031, RSMo 1986,[3] applies to municipal corporations and that GM is barred from recovery because it failed to comply with the provisions of that statute. Section 139.031 is a state revenue law requiring a taxpayer to pay taxes under protest in order to qualify for a refund from the taxing authorities. *See Crest Communications v. Kuehle*, 754 S.W.2d 563 (Mo. banc 1988). GM, on the other hand, claims that it was not required to pay taxes under protest because § 139.031 does not apply to city taxes. The Missouri Supreme Court's ruling in *Armco*, 883 S.W.2d at 8, conclusively determines that § 139.031 applies to the assessment of taxes collected by city and municipal collectors.

*Armco* concerned companies that purchased and transported natural gas into the City for industrial and commercial consumption. Because the companies did not believe that the City had authority to impose a license tax on them, the companies paid under protest and sought a refund. In opposition, the City claimed that the trial court erred because § 139.031 does not apply to city and municipal collectors, since the statute does not distinguish between "county collectors" and "collectors." *Id.* at 7. It was the City's contention that the two terms were interchangeable and that the word "collectors" meant only collectors of the county. *Id.*

**3.** All statutory citations are to Revised Missouri Statutes 1986, unless otherwise indicated.

Nonetheless, the Missouri Supreme Court held that the term "collectors," as found in § 139.031, is not limited to county collectors but also includes city and municipal collectors. *Id.* at 8. Hence, "the assessment of taxes collected by city and municipal collectors are ... subject to protest." *Id.*

In light of the *Armco* decision, § 139.031 applies to municipal taxes and acts as a potential bar to GM's recovery.[4] Section 139.031.1 articulates that a taxpayer must pay under protest by filing "with the collector a written statement setting forth the grounds on which his protest is based" when the taxes are paid. In GM's answer to Interrogatory Number 12, GM admitted that it had never "made or filed any written protest to Defendant against payment of the License Tax pursuant to Chapter 21 of the Code of General Ordinances." This admission is dispositive of the case. Because GM did not comply with § 139.031.1, it is ineligible for a tax refund, as a matter of law.

■ Nonetheless, GM argues that it was unaware that § 139.031.1 applied to city tax collections. At the time GM paid the city occupational license taxes, *Armco* had not been decided by the Missouri Supreme Court and earlier cases had not dealt with the issue. Therefore, GM claims that it had no notice that it was required to abide by the procedures set forth in § 139.031.

By asserting that the *Armco* interpretation should not apply retroactively, GM has formulated an argument which appears to be based upon the premise that the *Armco* decision had the effect of reversing or overruling previous law. Such argument is analogous to a basic precept that statutes should not be applied retroactively unless (1) the legisla-

ture specifically declares such an intent; and (2) the statute is solely remedial or procedural and does not affect the substantive rights of the parties. *See Reinerd v. A.B. Chance Co.*, 800 S.W.2d 777, 778 (Mo.App.1990). GM's situation does not concern a question of retroactivity, however.

■ In *Armco*, the Supreme Court addressed an issue of first impression, interpreting § 139.031 as it believed the legislature intended all along. *Armco*, 883 S.W.2d at 7–8. The court did not change an earlier interpretation on the issue of city tax collection; nor did the legislature enact a new statute which the court is attempting to apply retroactively. Parties are presumed to know the law and cannot normally avoid an act or deed on the ground that they were ignorant of the law. *See Shearin v. Fletcher/Mayo/Associates*, 687 S.W.2d 198, 202 (Mo.App.1984). GM had a duty to comply with § 139.031. It failed to satisfy this duty and cannot now claim ignorance as an excuse.

■ GM further argues that even if it is not entitled to a refund of the taxes under § 139.031, common law remedies are available to it for the recovery of the license tax. The Supreme Court has consistently held that "taxes, once paid, can only be recovered through proper statutory proceedings, and that the statutes must be adhered to." *Ackerman Buick, Inc. v. St. Louis County*, 771 S.W.2d 343, 346 (Mo. banc 1989) (citing *B & D Inv. Co., Inc. v. Schneider*, 646 S.W.2d 759 (Mo. banc 1983); *Westglen Village Associates v. Leachman*, 654 S.W.2d 897 (Mo. banc 1983); *Adcor Realty v. State Tax Com'n*, 627 S.W.2d 604 (Mo. banc 1982); *Boyd–Richardson Co. v. Leachman*, 615 S.W.2d 46 (Mo. banc 1981); *Metal Form Corp. v. Leachman,*

---

4. The text of the relevant provisions of § 139.031 is as follows:

1. Any taxpayer may protest all or any part of any taxes assessed against him, except taxes collected by the director of revenue of Missouri. Any such taxpayer desiring to pay any taxes under protest shall, at the time of paying such taxes, file with the collector a written statement setting forth the grounds on which his protest is based.
2. The collector shall disburse to the proper official all portions of taxes not so protested and shall impound in a separate fund all portions of such taxes which are so protested. Except as

provided in subsection 3 of this section, every taxpayer protesting the payment of taxes shall, within ninety days after filing his protest, commence an action against the collector by filing a petition for the recovery of the amount protested in the circuit court of the county in which the collector maintains his office. If any taxpayer so protesting his taxes shall fail to commence an action in the circuit court for the recovery of the taxes protested within the time prescribed in this subsection, such protest shall become null and void and of no effect, and the collector shall then disburse to the proper official the taxes impounded, and any interest earned thereon, as provided above in this subsection.

599 S.W.2d 922 (Mo. banc 1980); and *Nexus Rent–A–Car, Inc. v. Nash,* 747 S.W.2d 683 (Mo.App.1988)). In *B & D Inv. Co.,* 646 S.W.2d at 762, the Supreme Court acknowledged the purpose of statutes such as § 139.031, as follows:

> The essential purposes of such statutes are to furnish an adequate and sufficient remedy to the taxpayer, and at the same time to provide an expeditious method by which the various branches of government affected can obtain the revenue necessary for their maintenance without protracted delay or the hazards incident to the former procedure, since it is in effect a procedure to review the decisions of the taxing authorities. Moreover, the statutory requirement is intended not only to furnish proof that the payment was involuntarily made, but also to warn the tax collector that the tax is claimed to be illegal; and the filing of a protest has two purposes, to serve notice on the government of the dissatisfaction of the taxpayer, and to define the grounds on which the taxpayer stands. 84 C.J.S. *Taxation* § 638 (1974).

An exception to the rule that statutory remedies are exclusive has only been found in cases involving a taxpayer's contest of the legality of an increased assessed valuation placed upon the taxpayer's property where the taxpayer has been totally deprived of administrative remedies by the assessor's failure to give the required statutory notice. *See Crest Communications v. Kuehle,* 754 S.W.2d at 565–66; *John Calvin Manor, Inc. v. Aylward,* 517 S.W.2d 59, 63 (Mo.1974); and *Ingels v. Noel,* 804 S.W.2d 808, 810 (Mo.App.1991). These cases do not aid GM.

GM has not complied with the requirements of § 139.031 or any other statute which provides an available route for the recovery of taxes. Therefore, GM is ineligible for a tax refund. Accordingly, we will not address GM's points of alleged error.

The grant of summary judgment in favor of the City is affirmed.

All concur.