Cynthia LETT, et al., Appellants/Cross–
Respondents,

v.

CITY OF ST. LOUIS, Missouri, et al.,
Respondents/Cross–Appellants.

Nos. 67990, 67999.

Missouri Court of Appeals,
Eastern District,
Division Six.

Feb. 27, 1996.

Application to Transfer Denied
Aug. 19, 1997.

Roger G. Brown, Keith W. Brunstrom, Roger G. Brown & Associates, Jefferson City, Daniel C. Aubuchon, Daniel E. Raniere, Aubuchon, Raniere & Lally, P.C., St. Louis, Thomas J. Casey, Stephen F. Meyerkord, Casey & Meyerkord, St. Louis, for appellants.

Edward J. Hanlon, St. Louis, for respondents.

Before JAMES M. SMART, Jr. and ELLIS, Special Judges, and TURNAGE, Senior Judge.

JAMES M. SMART, Jr., Special Judge.

This case presents the issue of whether the earnings tax ordinances of the City of St. Louis authorize the collection of earnings tax on amounts earned by employees which are placed in deferred compensation plans not currently taxable under federal and state income tax laws. Cynthia M. Lett, Robert P. Fortman, William Kelleher, Thomas W. McDonough and James E. Hanselman ("taxpayers") are class representatives of a plaintiff class challenging the imposition of an earnings tax by the City of St. Louis ("City") upon amounts placed by the taxpayers in various deferred compensation plans. The court below found the tax had been collected improperly and enjoined the City from continuing to impose an earning tax on deferred compensation plans. The trial court also ordered that the amounts paid by the taxpayers to the City be refunded with interest from December 12, 1989. The taxpayers appeal, claiming that the trial court erred in determining that refunds should not be allowed for tax payments made prior to December 12, 1989. The City also appeals, claiming that: (1) the trial court erred in holding that the City did not have the authority to impose the earnings tax; and (2) the trial court erred in ordering that the City refund the monies collected as earnings tax on deferred compensation accounts since December 12, 1989. The judgment of the trial court is reversed.

On November 28, 1990, the taxpayers filed an action in the Circuit Court of the City of St. Louis seeking a declaratory judgment that the City had exceeded its taxing authority by taxing amounts that the taxpayers had contributed to various deferred compensation plans. Specifically, the taxpayers challenged the action of the City in taking 1% of their deferred compensation payments since they began deferred compensation programs. The taxpayers asked for injunctive relief to prohibit the City from continuing to impose the tax. They also asked that the unlawfully collected taxes be refunded to them, with interest.

On October 15, 1993, the circuit court granted the taxpayers' motion for partial summary judgment, finding:

The City's taxing power cannot exceed the state's power, thus the City has exceeded its authority by imposing its earnings tax on amounts allocated to deferred compensation plans and exempt from state

taxation by reason of § 105.900.2 R.S.Mo. Any sum deferred under the deferred compensation plans set out above is exempt from the City's earning tax to the same extent as it is exempt from income tax imposed by the State of Missouri.

The trial court found that the City unconstitutionally imposed a 1% earnings tax on funds placed in the following programs: (1) deferred compensation plans adopted under Internal Revenue Code (I.R.C.) § 457; (2) I.R.C. § 401(k) Plans; (3) salary reduction plans (SEP) adopted under I.R.C. § 408(k); (4) cafeteria plans adopted under I.R.C. § 125; (5) Individual Retirement Accounts (IRAs) adopted under I.R.C. § 408; (6) Thrift Savings Plans adopted under I.R.C. § 7701(j); (7) Employee Stock Option Plans adopted under I.R.C. § 401 and I.R.C. § 409; and (8) defined benefits and defined contribution plans (Keoughs, profit sharing, target benefit plans) adopted under I.R.C. § 401. The court ordered the City to cease and desist in imposing, assessing and collecting the tax.

On December 14, 1993, the trial court also granted summary judgment to the taxpayers on the issue of whether the taxpayers were entitled to tax refunds. The court ordered that a refund be made of monies paid after December 12, 1989, the date that the decision became final in *Whipple v. City of Kansas City*, 779 S.W.2d 610 (Mo.App.1989), a case which held that the City of Kansas City cannot tax contributions to a deferred compensation fund for city police officers because § 105.900.2 provides that governmental deferred compensation plans established pursuant to that statute are exempt from taxation. The trial court designated its order as final for the purposes of appeal pursuant to Rule 74.01(b). Both the taxpayer plaintiffs and the City appeal.

### Imposition of the Tax

■ The City claims that the trial court erred in holding that the City of St. Louis did not have the authority to impose an earnings tax on monies placed in deferred compensation accounts. The City asserts that the basis of the trial court's decision has been considered and held to be incorrect by the recent decision of the Missouri Supreme Court, *Hopkins v. City of Kansas City*, 894 S.W.2d 156 (Mo. banc 1995). In *Hopkins*, taxpayers sought a declaratory judgment that Kansas City may not impose an earnings tax on monies contributed by employees to deferred compensation plans. The trial court granted declaratory judgment in favor of the taxpayers. In reversing the decision of the trial court in *Hopkins*, the Supreme Court considered arguments similar to those put forward by the taxpayers in the instant case. The court rejected such arguments, finding that, as to non-governmental plans, the power of Kansas City to impose such a tax was not limited by any statute. *Id.* at 158–59.

*Hopkins* did not overrule *Whipple*. In *Whipple*, this court held that the state has, in § 105.900.2, RSMo 1986, exempted from state taxation the deferred compensation plans established pursuant to that statute by the state and by political subdivisions of the state. *Whipple*, 779 S.W.2d at 613. It is the deferred compensation plans which are not established under § 105.900 which are at issue in this case. The taxpayers concede that *Hopkins* is dispositive of the issue of the City's authority to tax.[1] Nevertheless, the taxpayers contend that the trial court's decision should be upheld. They argue that a City's power to tax is necessarily limited by the language of its enabling ordinances and, in this case, the language in the preamble of the earning's tax ordinance precludes taxation of the deferred compensation plans.

■ The City dismisses the taxpayers' argument, contending that the preamble to the ordinance is not a part of the substantive law. We believe that an isolated focus on that portion of the preamble may tend to obscure

---

1. Section 92.110, RSMo 1994, which has been in effect since 1954, authorized the City of St. Louis to levy an earnings tax on "salaries, wages, commissions and other compensation...." Article 10, § 11(f) of the constitution provides that nothing in the constitution "shall prevent the enactment of any general law permitting any county or other political subdivision to levy taxes other than ad valorem taxes for its essential purposes." *Hopkins* dealt with Section 92.210, which parallels 92.110, but applies to the City of Kansas City.

proper analysis. Preambles must be viewed in their context as part of an overall legislative intendment. In *Doemker v. City of Richmond Heights*, 322 Mo. 1024, 18 S.W.2d 394 (1929), the court noted that where the enacting part of the statute is clear, the preamble will not be considered for the purpose of contradicting the enacting portion of the statute. The court also noted, however, that in other cases where the application of the statute may be doubtful, a preamble may be helpful in determining legislative intent.

The court in *City of Rolla v. Studley*, 120 S.W.2d 185, 187 (Mo.App.1938) considered the preamble a part of a City resolution and stated that the preamble may be considered in determining whether that resolution was in sufficient compliance with the law. In *Phillips Pipe Line Co. v. Brandstetter*, 241 Mo.App. 1138, 263 S.W.2d 880 (1954), the court distinguished between section headings and preambles. The former are "usually the work of revision committees, and are not truly parts of the statute." *Id.* 263 S.W.2d at 884. They were held to be "of less importance than is the preamble of an amending act, in disclosing legislative intent." *Id.*

▆▆▆ The preamble is to be interpreted in a common sense way in light of the legislative purpose and its plain wording. Our task, similarly, is to attempt to discern, from the language of the *entire* set of ordinances, in the context of history, the legislative intent. *Mediq PRN Life Support Servs., Inc. v. Abrams*, 899 S.W.2d 101, 110 (Mo.App. 1994). The entire set of applicable provisions as well as the purpose of the legislation, are to be considered. *Id.* We know that the City *has* the lawful authority to tax deferred compensation plans. *Hopkins*, 894 S.W.2d at 159. The only question now is whether the City has in fact *chosen to do so* in its earnings tax ordinances.

▆▆▆ In 1948, the City adopted Ordinance 44678. The preamble to the ordinance recites that it is an ordinance levying and imposing an earnings tax for general revenue purposes of one-half of one percent[2] of salaries, wages, commissions, and other compensation earned after August 31, 1948. . . . The preamble also recites many other aspects of the ordinance, including the fact that the ordinance provides "that income exempt from the state income tax laws shall be exempt from taxation under the provisions of this ordinance." A relatively quick perusal of the preamble indicates that the preamble is merely a summary description of the enacting portions of the ordinance, much like an editorial summary, and is not intended to have an independent substantive effect. It is not difficult to see that the language referring to the "income exempt from the state income tax law" is simply a summary description of Section Eight of the ordinance, which was a precursor to the language adopted in 1952 which is now codified as Section 5.22.090 and states as follows:

> The income referred to in Sections 143.120 to 143.150 RSMo 1949, as not being subject to the state income tax shall not be taxable under this chapter.

Ordinance 46222, adopted in 1952, revised Section Eight to update the statutory citations.[3] Ordinance 47063, adopted in 1954, also carried forward the same pertinent language, once again revising the references to the statutory provisions relating to state income tax. We agree that the drafters wished to exclude from the reach of the earnings tax certain items not then subject to taxation under the state income tax. To be specific, Section Eight of the ordinance had an effect of excluding from the earnings tax the earnings of charitable organizations, labor organizations, fraternal benefit societies, and similar organizations. *§ 143.120, RSMo 1959.* It also had an effect, by reference, of excluding from taxation any trust created by an employer and employees as part of a stock bonus, pension, or profit-sharing plan, for the exclusive benefit of the employees, to which contributions are made by the employ-

---

2. In 1959, the rate of tax was increased from one-half percent to one percent. Ordinance 49540 of the City of St. Louis.

3. The original statutory citations contained in the ordinance are illegible in the copy of the ordi-

nance provided the court by the parties in the legal file. However, we gather that the 1952 ordinance merely updated the citations and did not refer to any new or additional provisions of state law.

er, employee, or both. § 143.140, RSMo 1959. It exempted from state income taxation the proceeds of life insurance policies paid to beneficiaries on the death of the insured, amounts received under worker's compensation statutes, and damages for personal injuries. § 143.150, RSMo 1959. It excluded from taxation the value of property acquired by gift or bequest. Id.

The most interesting provision of the foregoing is the one excluding from state income taxation certain employee pension trusts, § 143.140. We note that the pension trust, like a charitable trust, was not taxable as to earnings earned by the trust. The statute went on to provide, however, that "the amount actually distributed, or made available to any distributee shall be taxable to him in the year in which so distributed or made available, to the extent that it exceeds the total amount theretofore paid in by him." Thus, Missouri law at that time did not exclude from taxation the earnings of the employee which went into the trust. The State of Missouri applied income tax to *all* of the earnings of the employee, as earned income, even though some of the earnings went into the pension or profit-sharing trust. While the funds were in the trust, the earnings on the funds were not taxed. At the time of distribution to the employee, the employee was taxed only on the amount received above what the employee had already paid tax on. There was nothing in the statutory scheme which dictated that the employee could take a deduction from current income tax of the amounts paid into a pension plan. Thus, at that time state law *did* tax, for income tax purposes, amounts paid to deferred compensation plans and other pension plans. Since 1972, when Missouri revised its income tax law to provide that the Missouri adjusted gross income shall be the same as the federal adjusted gross income, Missouri has not taxed amounts paid into deferred compensation plans. However, prior to 1972, earnings were taxed for income tax purposes, including,. as far as we can tell from the record, funds paid into a deferred compensation type of plan. Having seen no authority to the contrary, we conclude that it is only since 1972 that state income tax law has exempted transfers to deferred compensation plans,

and the exemption is only an indirect result of Missouri's adoption of the federal adjusted gross income. *See § 143.121, RSMo 1979; Compare to § 143.100, RSMo 1969.* Consequently, in our view, the language of Section Eight has *never* exempted from earnings taxation the amounts paid into deferred compensation plans. And since the preamble language in question was only a description of the effect of Section Eight, the preamble, likewise, was never intended to exempt from earnings taxation the amounts paid into deferred compensation plans.

The parties have not provided us with a history of changes to the earnings tax ordinances for the period from 1959 to 1989. The record shows that, at some point, the withholding portion of the ordinance was changed, so that the section now specifically provides that every employer "shall deduct at the time when earned *irrespective of when paid,* the tax of one percent.... (emphasis added). The record does not reveal when the ordinance was amended to include the "irrespective of when paid" language, and when the City began collecting tax on amounts going into deferred compensation plans. We gather, however, that the City has always taxed the earnings of the employee, without making any deduction for amounts going into deferred compensation plans. It also appears, taking the language of the amendment at face value, that the amendment of the ordinance provided clarification that earnings to be paid *later* to an employee were *not* to be excluded in the current collection of the tax. Thus, the amendment appears to represent a conscious decision by the City to make clear the City's position of including in its taxing scheme the amounts going into deferred compensation plans. The City presumably believed that there was no need to amend the language of the portion of the code which *imposed* the tax in the first place, since that portion imposed a tax on amounts "earned" without reference to when it was paid.

 The fact that the ordinances contained general language in the preamble suggesting that the earnings tax would maintain a symmetry with the state income tax (and not tax any item not subject to state income

tax) does not carry the day for the plaintiffs, for reasons already discussed. In any event, the specific language of the withholding section, enacted later, directly modifies any general intent expressed earlier.

[A] chronologically later statute, which functions in a particular way will prevail over an earlier statute of a more general nature, *Laughlin v. Forgrave*, 432 S.W.2d 308 (Mo. banc 1968); and the latter statute will be regarded as an exception to or qualification of the earlier general statute, *City of Flat River v. Mackley*, 212 S.W.2d 462 (Mo.App.1948).

*Goldberg v. State Tax Comm'n*, 639 S.W.2d 796, 805 (Mo. banc 1982). Where one statute deals with a particular subject in a general way, and a second statute treats a part of the same subject in a more detailed way, the more general gives way to the more specific. *O'Flaherty v. State Tax Comm'n*, 680 S.W.2d 153, 154 (Mo. banc 1984); *See also Chiodini v. Summer Ridge Dev. Co.*, 751 S.W.2d 378, 381 (Mo. banc 1988) (later enacted, specific language related to notice of mechanics' lien filing by architects prevailed over general language of a different section of the same statute). Here, the City adopted specific language indicating a clear intent to include amounts paid to deferred compensation plans in its current taxing scheme. If there existed any prior ambiguity, the City removed the ambiguity.

We recognize that the whole point of deferred compensation is to defer taxation. Therefore, if the City is choosing to tax, up front,[4] the amounts going into deferred compensation plans, the City is operating "against the grain" of the deferred compensation concept. The City is, to that extent,

destroying the symmetry of its tax with the state and federal income tax. But there is nothing, according to *Hopkins*, which requires the City to subordinate its taxing program to the taxation plans of the other governmental entities. The City of St. Louis, sometime between 1959 and 1989, intentionally adopted language designed to make clear that the City wished to include within the reach of its earnings tax amounts going into deferred compensation plans. We hold that the City had the authority to tax such earnings, and that it has exercised that authority in its earnings tax ordinances.[5]

### *Refund*

The City concedes it has no authority to collect earnings tax on amounts going into governmental deferred compensations plans established pursuant to § 105.900. In 1990, after *Whipple* held that amounts contributed to such plans are not taxable, the City voluntarily ceased collection of earnings taxes as to such plans. The issue of refund must be considered, however, because the City did illegally collect the tax prior to the date of its decision to cease taxing these exempt governmental plans. The trial court ordered that all amounts paid by all taxpayers to the City after December 12, 1989, be refunded with interest. December 12, 1989, is the date that the Missouri Supreme Court denied transfer in *Whipple*. The trial court treated all payments made after December 12, 1989, as involuntary, and therefore subject to refund. Both the taxpayers and the City appeal from this portion of the trial court's order.

4. Of course, the City should not be able to tax earnings a second time when the assets in the plan are distributed, because the ordinance taxes the compensation when it is earned, regardless of when it is paid to the employee.

5. In their reply brief, taxpayers raise for the first time an argument that the City's earnings tax ordinance is invalid because it violates the doctrine of intergovernmental tax immunity because the deferred compensation contributions of some state employees are not subject to current taxation while there is apparently no exemption for the plans of any federal employees. *See Hackman v. Director of Revenue*, 771 S.W.2d 77 (Mo.

banc 1989). This argument is not advanced as an assignment of error, but rather is apparently advanced in support of the decision of the trial court as an additional justification for the trial court's actions. We decline, however, to address the issue because: 1) the argument was not raised below; 2) there is no showing that any of the representative plaintiffs are federal employees; thus, there is no showing that plaintiffs have standing to raise the issue; and 3) plaintiffs'. contention actually challenges the effect of § 105.900 rather than the ordinances of the City of St. Louis, which draw no distinction as to different types of deferred compensation plans.

A suit for the refund of taxes paid in error or collected illegally is looked upon with disfavor for public policy reasons. *Community Fed. Sav. & Loan Ass'n v. Director of Revenue,* 752 S.W.2d 794, 797 (Mo. banc 1988). In *Community Federal,* the court explains the reasoning behind this policy, stating:

> Governments are entitled to presume that statutes are constitutional. Governmental budgets are prepared on an annual cash basis.... Therefore, in the absence of a statutory limitation on the time in which a taxpayer may file suit to declare a tax unconstitutional, governments would be subject to substantial liabilities from refunds of those unconstitutional taxes. Accordingly, in the absence of statutory authority, taxes voluntarily, although erroneously paid, albeit under an unconstitutional statute, cannot be refunded.

*Id.* (Citations omitted).

Although the trial court treated the taxes as paid involuntarily after December 12, 1989, the trial court found that the taxpayers in the instant case had voluntarily paid the tax. We find nothing in the record which contradicts this finding. The taxpayers challenge this finding, citing the rule that payment of a tax under duress or compulsion to avoid harsh penalties imposed for nonpayment is an involuntary payment, citing *State ex rel. S.S. Kresge Co. v. Howard,* 357 Mo. 302, 208 S.W.2d 247, 250 (banc 1947). In *Kresge,* the court found the payment of domestication taxes involuntary despite the fact that no formal protest was made because the taxpayer company would have forfeited its right to do business in Missouri if it failed to pay the tax. *Id.* There is no showing made by the taxpayers in the instant case that they paid because they faced the same kind of compulsion. The argument of taxpayers that the potential civil and criminal penalties constitute duress is without merit. Any taxpayer paying any kind of tax, legal or illegal, faces the possibility of civil or criminal penalties for withholding payment. Few taxpayers pay their taxes purely out of civic devotion and a spirit of generosity. If the existence of such penalties will inevitably be regarded as rendering the payment of taxes involuntary, there would be no purpose to provisions made for the payment of taxes under protest. Moreover, *Kresge* preceded the adoption of § 139.031, which provides for payment under protest. The vitality of *Kresge* as precedent is also rendered questionable by more recent decisions of the Missouri Supreme Court, *e.g. Armco Steel v. City of Kansas City,* 883 S.W.2d 3 (Mo. banc 1994); *Ackerman Buick v. St. Louis County,* 771 S.W.2d 343 (Mo. banc 1989).

Section 139.031 establishes a mechanism for a taxpayer to use when protesting the payment of taxes assessed against him. It provides, in pertinent part:

> 1. Any taxpayer may protest all or any part of any taxes assessed against him, except taxes collected by the director of revenue of Missouri. Any such taxpayer desiring to pay any taxes under protest shall, at the time of paying such taxes, file with the collector a written statement setting forth the grounds on which his protest is based. The statement shall include the true value in money claimed by the taxpayer if disputed.

This section applies to the assessment of taxes collected by city and by municipal collectors. *Armco Steel v. City of Kansas City,* 883 S.W.2d 3, 8 (Mo. banc 1994); *General Motors Corp. v. City of Kansas City,* 895 S.W.2d 59, 61 (Mo.App.1995). "The Supreme Court has consistently held that 'taxes, once paid, can only be recovered through proper statutory proceedings, and that the statutes must be adhered to.'" *General Motors,* 895 S.W.2d at 62 (citing *Ackerman Buick, Inc. v. St. Louis County,* 771 S.W.2d 343, 346 (Mo. banc 1989)). The court in *General Motors* explained that the protest statute was designed not only to furnish proof as to the involuntary nature of the payment by the taxpayer, but also to serve as notice to the government that the taxpayer is dissatisfied. *General Motors,* 895 S.W.2d at 63.

An argument could be made that the filing of a lawsuit for recovery of taxes constitutes an adequate "protest," even though not submitted contemporaneously with the payment of the taxes, because it constitutes a "written statement" setting forth the grounds on which the protest is based. Even if it were an adequate form of "protest," it would necessarily be effective only as to tax

payments made *after* the filing of the lawsuit and service of process on the City. The taxpayers do not make such an argument in this case, arguing instead that all tax collections were invalid *ab initio*, and that all illegally collected taxes must be refunded. Nevertheless, we have reviewed the record to see whether any taxes were collected in violation of § 105.900.2 *after* the taxpayers filed suit. The petition was filed November, 1990. The record shows that the Collector of Revenue had notified employers in January, 1990, that deferred compensation plans established under § 105.900 would be treated as exempt in view of the *Whipple* decision. The record thus indicates that no taxes were collected in violation of § 105.900.2 after suit was filed by the taxpayers. Consequently, it is unnecessary for this court to consider whether the filing of a lawsuit constitutes a sufficient protest under § 139.031 as to taxes paid subsequent to the initiation of such litigation.

■ No protest was filed in behalf of any plaintiff prior to the City's decision to forego collection of such taxes. The fact that the actual payment of the tax is often performed by the payroll department of an organization does not render employees helpless to protest. The statute says nothing which precludes the filing of a protest in behalf of the employees by the person submitting the payment in behalf of the employee. In this case, the taxpayers failed to show that they paid under protest, and are thus not legally entitled to a refund.

### Conclusion

The trial court erred in holding that the City had no authority to collect earnings taxes on the plaintiffs' deferred compensation plans. The trial court also erred in directing a refund to taxpayers for amounts collected after the date of December 12, 1989. The judgment of the trial court directing the City to cease collection of the tax, and ordering a refund, is reversed.

All concur.