**James R. HOCKENSMITH and Laresa Hockensmith, Appellants,**

v.

**Gary D. BROWN, Maria Brown, and Ronnie Brown, Respondents.**

**No. WD 51051.**

Missouri Court of Appeals, Western District.

July 23, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 27, 1996.

Application to Transfer Denied Oct. 22, 1996.

Eddie Gene Dougherty, Kansas City, for appellants.

Matthew Rau, Kansas City, for respondents.

HANNA, Presiding Judge.

James R. and Laresa Hockensmith appeal from an order of the circuit court granting summary judgment in favor of defendants, Gary D. and Maria Brown (parents), and their son, Ronnie Brown (Brown).

In March 1991, Brown was arrested on drug charges. One month later, he was placed in an outpatient drug and alcohol rehabilitation program.

On September 20, 1991, Brown was 17 years old. He went to a high school football game with his parents' permission. He then went to a party at the home of Joseph and Sheila Bullin, without his parents' permission. While at the party, he drank a large quantity of alcohol, became violent, and struck two individuals, including Mrs. Bullin. He left the party and went to the QuikTrip convenience store located on Barry Road near Interstate 29 in Platte County, where the altercation with the plaintiff took place.

That evening, shortly before midnight, plaintiff, James Hockensmith, a police officer, stopped at the QuikTrip to buy a cup of coffee before reporting for roll call at the North Patrol Division of Kansas City. Officer Hockensmith was wearing his police uniform, equipped with the department issued sidearm and "Cap Stun" (pepper spray). He was driving a marked patrol car. However, because he had not yet reported for duty, Officer Hockensmith was without his department issued walkie-talkie, bullet-proof vest, and police baton.

As Hockensmith got out of his patrol car, he saw Brown yelling and screaming at someone in the parking lot, and generally causing a public disturbance. He approached Brown to investigate the situation and defuse the disturbance. The officer asked Brown what the problem was and Brown replied, "Make them give me back my nine millimeter." Hockensmith asked Brown to repeat himself, which he did. In response to Brown's comment, Hockensmith turned and looked at the other people in the parking lot to determine whether they were a possible source of danger. While Hockensmith's attention was diverted, Brown struck him in the right eye and ran into the QuikTrip store. Hockensmith pursued Brown into the store, fearing that he might present a danger to the store patrons. Hockensmith intended to apprehend and arrest him.

Once inside the store a scuffle ensued. Brown taunted Hockensmith, "dancing around like a prize fighter" saying, "Come on, come on." In the course of the melee, Brown struck Hockensmith at least twice on the side of the face. Hockensmith attempted to immobilize Brown with the "Cap Stun." During the altercation, Hockensmith ordered the store's assistant manager to call for back up on an "assist the officer" call. Eventually, a store patron helped Hockensmith subdue Brown. Brown was arrested for assaulting a law enforcement officer.[1]

The Hockensmiths filed an amended petition against Brown, his parents, and Joseph and Sheila Bullin for damages sustained by Hockensmith.[2] Three counts were against Brown: ordinary negligence (count I); assault and battery (count II)[3]; and willful, wanton, and reckless negligence (count VII). Three counts were against his parents: ordi-

---

1. Brown pleaded guilty to the felony charge of first degree assault of a law enforcement officer, § 565.081, RSMo 1994, and was sentenced to five years imprisonment.

2. The Bullins failed to respond to the Hockensmiths' petition and are in default. They are not a part of this appeal.

3. The trial court ruled that this count was barred by the two-year statute of limitations for assault and battery, § 516.140, RSMo 1994. The Hockensmiths did not appeal this ruling.

nary negligence (count III); statutory damages under § 537.045, RSMo 1994, (count IV); and willful, wanton, and reckless negligence (count VIII). Count VI, brought by Ms. Hockensmith, was against all defendants and alleged loss of services and consortium arising out of her husband's injuries.

Brown and his parents moved for summary judgment on the grounds that the Hockensmiths' claims for ordinary negligence were barred by the firefighter's rule, and the intentional assault and battery count was barred by the two-year statute of limitations. § 516.140, RSMo 1994. They further argued that the claims for statutory damages and loss of services were derivative of the above stated counts and, therefore, must also fail. The summary judgment motion was submitted to the court on the pleadings, depositions, and affidavits of the parties involved. At a hearing, Brown and his parents asserted that the alleged conduct did not amount to willful, wanton, or reckless negligence. The trial court granted summary judgment in favor of Brown and his parents on all counts. The Hockensmiths appeal.

◼ Appellate review of the propriety of summary judgment is essentially *de novo. ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record is viewed in the light most favorable to the party against whom summary judgment was entered, and that party is afforded the benefit of all reasonable inferences that may be drawn from the evidence. *Id.* Facts set forth by affidavit or otherwise in support of a party's motion are taken as true, unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* Summary judgment will be affirmed on appeal if the reviewing court determines that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *General Motors Corp. v. Kansas City*, 895 S.W.2d 59, 61 (Mo.App.), *cert. denied,* —— U.S. ——, 116 S.Ct. 277, 133 L.Ed.2d 197 (1995).

The Hockensmiths first contend that the trial court erred in granting summary judgment in favor of Brown and his parents as to the ordinary negligence claims in that the

firefighter's rule does not apply to the facts of this case.

In their claim for ordinary negligence against Brown (count I), the Hockensmiths alleged that Brown was negligent in the following respects:

(a) Consuming alcoholic beverages as a minor;

(b) Consuming alcoholic beverages knowing his propensities for violence while under the influence of alcohol;

(c) Entering a public place under the influence of alcohol when he knew or should have known that he was incapable of controlling his actions;

(d) Failing to warn the Plaintiff and others of his propensity for violence while under the influence of alcohol;

(e) Failing to warn Defendants, J.L. and Sheila Bullin, of his age as a minor when offered alcoholic beverages;

(f) Failing to warn Defendants, J.L. and Sheila Bullin, of his propensity for violence while under the influence of alcohol; and

(g) Swinging his arm and striking the Plaintiff James R. Hockensmith in the face.

◼ A petition seeking damages for actionable negligence must allege "ultimate facts," which, if proven, show: (1) the existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) the failure of the defendant to perform that duty; and (3) an injury to the plaintiff resulting from such failure. *Scheibel v. Hillis*, 531 S.W.2d 285, 288 (Mo. banc 1976).

◼ A thorough review of the record shows that Brown's conduct can only be described as an intentional assault and battery. The allegations asserted in count I do not give rise to triable issues of negligence.

In his deposition, Hockensmith testified that Brown struck him in the right eye while outside the QuikTrip store. He further testified that, in the store, Brown was "dancing around like a prize fighter" saying, "Come on, come on." Brown then struck Hockensmith two more times in the right eye.

Additionally, a QuikTrip employee witnessed Brown's abusiveness, obstreperousness, and his resistance to Hockensmith's efforts to subdue him. In his statement to the police, he stated that he was watching Hockensmith talk to Brown when "[t]he next thing I knew, was I saw him swing and hit the officer in the face with his fist." He further stated that he saw Hockensmith try to restrain Brown, who "struck Hockensmith in the face a couple more times."

Moreover, Brown pleaded guilty to the felony charge of first degree assault of a law enforcement officer, § 565.081, thereby admitting that he "knowingly cause[d] or attempt[ed] to cause serious physical injury to a law enforcement officer."

■ The theories of negligence and intentional tort are contradictory and mutually exclusive. *Jones v. Marshall,* 750 S.W.2d 727, 728 (Mo.App.1988). Evidence of an act purposely done negates negligence. *Id.* A plaintiff cannot recover under a negligence theory if the only evidence is that of an intentional tort. *Id.* The only evidence presented by the Hockensmiths that would support an inference of negligence was a self-serving letter written by Brown to Hockensmith. In this letter, Brown claimed that he lost control by drinking a large quantity of alcohol that night, and he did not remember what happened.

■ While we view the record in the light most favorable to the party against whom summary judgment was rendered, the inconsistency between Brown's plea of guilty to the charge of assault of a law enforcement officer and his self-serving statement that he lost control and cannot remember what happened does not create a genuine issue of fact. Hockensmith's claim that Brown did not intend to hit him is without merit. "Where the 'genuine issues' raised by the nonmovant are merely argumentative, imaginary or frivolous, summary judgment is proper." *ITT Commercial Fin. Corp.,* 854 S.W.2d at 382.

We have searched the record for some evidence that supports the Hockensmiths' negligence theory, however, the evidence shows that Brown deliberately and purposefully struck Hockensmith, and no abstruse process of reasoning can torture it into an act of negligence. *Jones,* 750 S.W.2d at 728. Having pleaded simple negligence, the Hockensmiths cannot recover when the only evidence is an assault and battery, an intentional tort. *Miller v. Kruetz,* 643 S.W.2d 310, 313–14 (Mo.App.1982). Point denied.

The Hockensmiths next allege that the trial court erred in granting summary judgment in favor of Brown as to their claim of willful, wanton, and reckless negligence (count VII) because the record reflects a genuine issue of fact as to whether Brown's conduct constituted ordinary negligence or willful, wanton, and reckless negligence.

■ Ordinary negligence is, so to speak, a "lesser included offense" of willful, wanton, and reckless negligence. *Ford v. Politte,* 618 S.W.2d 44, 46 (Mo.App.1981). A person is reckless, willful, and wanton when he or she makes a conscious choice to act, either with knowledge of the serious danger to others involved or with knowledge of the facts, which would disclose the danger to any reasonable person. *Farm Bureau Town & Country Ins. Co. v. Turnbo,* 740 S.W.2d 232, 235 (Mo.App.1987). Prior to acting, the person must recognize that his or her conduct involves a risk substantially greater in amount than that which is necessary to make the conduct merely negligent. *Id.* The concept of willful and wanton negligence encompasses conduct that lies somewhere between ordinary negligence and intentional conduct. 57A Am.Jur.2d § 286 (1989).

Our result does not change because the Hockensmiths pleaded willful, wanton, and reckless negligence in Count VII, rather than ordinary negligence. The Hockensmiths still pleaded negligence in this count, albeit an extreme variety. *Ford,* 618 S.W.2d at 46. We have determined that the Hockensmiths' cause of action against Brown was for assault and battery, an intentional tort. In light of the record before us, the trial court did not err in granting summary judgment in favor of Brown on the claim of willful, wanton, and reckless negligence.

In their claim for ordinary negligence against the parents (Count III), the Hocken-

smiths alleged that they were negligent in the following respects:

(a) In granting Defendant Ronnie D. Brown permission to visit a home where they knew or should have known he would be served alcoholic beverages;

(b) In failing to adequately supervise his activities so as to restrict his access to alcoholic beverages;

(c) In failing to provide adequate counseling, assistance, and the supervision necessary to deal with his addiction to alcohol;

(d) In failing to warn others of his propensity to harm others while under the influence of alcohol; and

(e) In failing to warn Defendants J.L. and Sheila Bullin of Defendant Ronnie D. Brown's tendency to harm others while under the influence of alcohol.

■ The parents contend that the firefighter's rule claims effectively bars the Hockensmiths' claim against them for ordinary negligence.[4]

■ The firefighter's rule provides:

[A] fireman brought in contact with an emergency situation solely by reason of his status as a fireman who is injured while performing fireman's duties may not recover against the person whose *ordinary negligence* created the emergency. (emphasis added).

*Krause v. U.S. Truck Co., Inc.*, 787 S.W.2d 708, 711 (Mo. banc 1990), *citing Phillips v. Hallmark Cards, Inc.*, 722 S.W.2d 86, 87 (Mo. banc 1986). This rule has been extended to encompass police officers acting in the course of their professional duties. *Lambert v. Schaefer*, 839 S.W.2d 27, 29 (Mo.App.1992). The Missouri Supreme Court has discussed the public policy rationale for this rule:

Firemen and police officers generally cannot recover for injuries attributable to the negligence that required their assistance because the relation between those persons and the public specifically calls them to confront certain hazards on behalf of the public. Firemen and policemen are hired, trained and compensated to deal with dangerous, but inevitable, situations. Situations requiring the presence of firefighters and police officers are predictable, but their appearance at a specific time and place is not.

*Krause*, 787 S.W.2d at 712 (citations omitted).

The Hockensmiths argue that in order for Hockensmith to have come within the scope of the firefighter's rule: (1) he must have been on duty; (2) he must have been responding to an emergency; and (3) he must have been injured by the ordinary negligence that required his assistance.

■ The Hockensmiths contend that, because he had not yet reported for work, Hockensmith was not acting in his official capacity as a police officer when he approached, and was ultimately injured, by Brown. It is true that Hockensmith had not officially reported for duty at the time of the incident. Regardless, the argument between the parties as to whether he was on or off duty at the time of the incident misses the point. A police officer does not have to be officially on duty to be brought into contact with an emergency situation solely by reason of his status as a police officer for purposes of the firefighter's rule. For purposes of workers' compensation coverage and public policy considerations that justify the firefighter's rule, Hockensmith was considered to be on duty. *Phillips*, 722 S.W.2d at 89; *Nastasio v. Cinnamon*, 295 S.W.2d 117, 120 (Mo.1956).[5] The firefighter's rule applies if an emergency exists irrespective of his or her official duty status.

■ The Hockensmiths argue that Officer Hockensmith was not responding to an emergency because he was not dispatched to the QuikTrip to quell the disturbance, but

---

4. The firefighter's rule can bar a police officer's cause of action against a defendant, as well as a defendant's parents when the defendant is a minor. See *Lambert v. Schaefer*, 839 S.W.2d 27 (Mo.App.1992).

5. Officer Hockensmith collected in excess of $30,000 in worker's compensation payments for injuries incurred in the scope of his employment "on duty" as a police officer.

merely stopped there to buy a cup of coffee as an ordinary customer. Although Hockensmith's arrival at the QuikTrip for a cup of coffee does not qualify as responding to an emergency that would invoke the firefighter's rule, an officer does not have to be "summoned" to the scene for the rule to apply.

In this case, the critical and dispositive facts are those that led Hockensmith to become involved with Brown, not what originally motivated him to go to the QuikTrip. Hockensmith arrived at the QuikTrip in uniform, on his way to work, carrying his department issued side-arm and "Cap Stun," in a marked patrol vehicle. An emergency arose when Hockensmith saw Brown creating a disturbance by screaming and yelling at people in the parking lot. Hockensmith approached Brown to dispel what appeared to be a volatile situation. When Hockensmith arrived, Brown made reference to a dangerous weapon, which gave Hockensmith reason for concern about the safety of the situation. When Hockensmith turned his head to see if other people were presenting a danger, Brown struck him in the right eye. When Brown ran into the convenience store, Hockensmith pursued him because he was concerned that Brown could pose a danger to the store patrons. He intended to apprehend and arrest Brown for hitting an officer. The emergency continued inside the convenience store, where Hockensmith was struck at least twice.

Hockensmith happened upon a public disturbance and responded to it in his capacity as a police officer. His primary public duty as a police officer is to confront danger. *Krause,* 787 S.W.2d at 713. He is expected to act with daring and dispatch to protect life and property. Hockensmith responded to, and became involved in, an emergency police matter, which ultimately resulted in bodily injury. It was a risk of injury that is an inevitable part of the job and the basis for the public policy consideration of the firefighter's rule. Because Hockensmith was responding to an emergency situation, the trial court correctly granted summary judgment in favor of the parents as to the Hockensmiths' claim of ordinary negligence.

The Hockensmiths next argue that the trial court erred in granting summary judgment in favor of the parents on their claim of willful, wanton, and reckless negligence because the record reflects a genuine issue of fact as to whether their conduct constituted ordinary negligence or willful, wanton, and reckless negligence.

■ While the firefighter's rule "may provide a shield of liability for defendants in cases involving ordinary negligence, it is not a license to act with impunity or without regard for the safety officer's well-being." *Lambert,* 839 S.W.2d at 29. The firefighter's rule does not apply to: (1) acts involving reckless or wanton negligence, or willful conduct; (2) separate and independent acts; or (3) intentional torts. (citations omitted).

The Hockensmiths contend that the parents' failure to supervise Brown and warn others of his alleged propensities for violence while intoxicated constituted willful, wanton, and reckless negligence.

■ Acceptance of the custody and control of a minor child creates a relationship sufficient to support a duty of care. *A.R.H. v. W.H.S.,* 876 S.W.2d 687, 691 (Mo.App. 1994). However, the duty to supervise is a narrow one, and the breach of such duty turns upon whether a reasonable person would recognize that an incident of the type alleged might occur and that steps should be taken to prevent it. *Id.* at 689. Since the Hockensmiths are claiming willful, wanton, and reckless negligence, liability turns on whether the parents recognized that their conduct involved a risk substantially greater in amount than that necessary to create liability for mere negligent supervision. *See Farm Bureau Town & Country Ins. Co.,* 740 S.W.2d at 235.

■ The Hockensmiths first allege that the parents willfully, wantonly, and recklessly breached their duty to supervise in giving Brown permission to attend the party at the Bullins' home. However, in the parents' depositions, both parents testified that they had not given Brown permission to attend any party and did not even know that there was a party. The Hockensmiths presented no evidence to refute this testimony. *See ITT*

*Commercial Fin. Corp.,* 854 S.W.2d at 376. Thus, there is no genuine issue of fact concerning this allegation. Because it is undisputed that the parents did not give Brown permission, there can be no argument that granting such permission constituted willful, wanton, or reckless negligence, because they did not have knowledge of the facts that would disclose the danger to any reasonable person. *Farm Bureau Town & Country Ins. Co.,* 740 S.W.2d at 235.

■ The next two allegations assert that the parents were willfully, wantonly, and recklessly negligent in failing to adequately supervise Brown by restricting his access to alcohol and in dealing with his addiction. The undisputed facts are as follows. Brown lived with, and under the supervision of, his parents before this incident occurred. When Brown was 15, he was expelled from school for his involvement in approximately three fights on school grounds. The parents were also aware that Brown was involved in another fight after he was expelled.

In March 1991, Brown was convicted of possession of drugs. Soon after this conviction, Brown admitted to his parents that he had a drug problem. Brown then entered an outpatient drug rehabilitation program, where, during counseling, the parents learned that their son was also addicted to alcohol. After learning of Brown's substance abuse problems, he was strictly monitored and the parents required him to get permission before going anywhere. Brown has received counseling for his addictions both before and after the incident at issue here.

The parents did not drink, nor did they keep alcohol in their home. In August 1991, they moved, partly in an effort to remove their son from the unhealthy influences in their old neighborhood, and partly due to Mr. Brown's deteriorating health.

On September 20, 1991, Brown received permission from his parents to attend a football game. It was the first time that he was allowed out unsupervised since the March incident. After the game, Brown attended the Bullins' party, without his parents' permission. When Brown did not return home from the game by 9:00 p.m., the Browns called the mother of the boy who had gone with Brown to the game and asked about the boys' whereabouts. It was then that the parents learned that their son had gone to a party hosted by the Bullins. The parents did not know the Bullins.

Mrs. Brown testified that the other boy's mother told her that Mrs. Bullin had assured her that she would chaperon the party and there would be no alcohol there. At that time, the parents did not contact the Bullins or attempt to pick up Brown from the party. Around midnight, after learning that Brown had provoked a fight and hit two people, Mrs. Brown went to the Bullins' house to get Brown, but he had already left.

The Hockensmiths presented no evidence to contradict the parents' testimony. Rather, they relied solely on the conclusory allegations set forth in their petition that the parents "fail[ed] to adequately supervise his activities so as to restrict his access to alcoholic beverages" and "fail[ed] to provide adequate counseling, assistance, and the supervision necessary to deal with his addiction to alcohol." Such allegations do not create a genuine issue of fact. *See ITT Commercial Fin. Corp.,* 854 S.W.2d at 376. Because there was no evidence to support a charge that the parents' conduct was negligent, let alone willful and wanton, the trial court correctly granted summary judgment in their favor as to these allegations.

■ The last two allegations assert that the parents were willfully, wantonly, and recklessly negligent in failing to warn the Bullins, and the general public, of their son's propensity for violence under the influence of alcohol. To succeed on such a claim, one element that the Hockensmiths must show is the existence of a duty on the parents' part to protect Hockensmith from injury. *Bradley v. Ray,* 904 S.W.2d 302, 306 (Mo.App. 1995). The touchstone for the creation of such a duty is foreseeability. *Id.* at 311. A duty of care arises out of circumstances in which there is a foreseeable likelihood that particular acts of omissions will cause harm or injury. *Id.* The duty here does not arise out of any special relationship between the parties, but rather out of the defendant's knowledge of a dangerous condition, which

imperils the plaintiff, and time and ability to prevent the attack. *Id.*

Again, because the Hockensmiths alleged willful, wanton, and reckless negligence, they must show something substantially greater than the reasonable anticipation of danger. *See Farm Bureau Town & Country Ins. Co.*, 740 S.W.2d at 235. The parents must have made a conscious choice to act, either with knowledge of the serious danger to others involved or with knowledge of the facts, which would disclose the danger to any reasonable person. *Id.*

██ It is undisputed that Brown was expelled from school for fighting at age 15. There is also no dispute that Brown had been in rehabilitation for his alcohol dependency. However, Mrs. Brown testified that her son was not involved in drugs or alcohol when he was involved in the fights. Further, the parents had never seen Brown under the influence of alcohol. Mrs. Brown stated that because she had never seen Brown under the influence of drugs or alcohol, she could not say how this affected his character. Essentially, all of the evidence presented by the parents showed that they did not have knowledge of their son's propensity for violence under the influence of alcohol.

The Hockensmiths again failed to present any evidence to rebut the parents' testimony. The fact that Brown had been in fights and the fact that he is addicted to alcohol, together, do not establish that he had a propensity for violence when under the influence of alcohol, nor do they create a genuine issue of fact. Moreover, there is no evidence that the parents had knowledge of Brown's alleged violent propensity when under the influence of alcohol. Because there was no evidence of knowledge on the part of the parents, there was no evidence supporting a charge of willful and wanton negligence. Thus, the parents were entitled, as a matter of law, to judgment in their favor as to these final allegations. The trial court correctly granted summary judgment in favor of the parents as to the claim of willful, wanton, and reckless negligence.

In their final point, the Hockensmiths contend that the trial court erred in granting summary judgment on their claim for statutory damages under § 537.045.2, because such a claim is not barred by the two-year statute of limitations for assault and battery, § 516.140. Section 537.045.2 provides:

The parent or guardian, excluding foster parents, of any unemancipated minor, under eighteen years of age, in their care and custody, *against whom judgment has been rendered* for purposely causing personal injury to any individual, shall be liable for the payment for that judgment up to an amount not to exceed two thousand dollars, provided that the parent or guardian has been joined as a party defendant in the original action. (emphasis added).

██ By its own terms, § 537.045.2 imposes on a parent (or guardian) the obligation to pay a judgment on behalf of his or her child only when a "judgment has been rendered" against that child. In this case, the Hockensmiths asserted three claims against Brown and the trial court properly granted summary judgment in favor of Brown on all of these counts. Consequently, the Hockensmiths have no surviving claim against Brown upon which they may obtain a judgment. It does not matter whether or not the two-year statute of limitations applies to § 537.045, because this statute only applies when a judgment has been rendered against the minor. Because no judgment has been rendered against Brown, the parents cannot be held liable under § 537.045.2. The trial court correctly granted summary judgment in favor of the parents as to the Hockensmiths' claim for statutory damages.

The judgment is affirmed.

SMART, J., concurs.

ELLIS, J., files separate dissenting opinion.

ELLIS, Judge, dissenting.

I concur with the majority holding that the trial court properly granted summary judgment in favor of Ronnie Brown on Counts I and VII of the Hockensmiths' petition. Based on the record before us, Ronnie Brown's conduct can only be ascribed as intentional. I likewise concur with the majority's affirmance of the trial court's grant of

summary judgment as to Count IV, the claim for statutory damages against Gary D. and Maria Brown. However, for the reasons hereafter stated, I must respectfully dissent from the majority's affirmance of the trial court's grant of summary judgment in favor of Gary D. and Maria Brown on Counts III, VI and VIII of the Hockensmiths' petition.

Count III of the Hockensmiths' first amended petition asserted a claim against Gary D. and Maria Brown for negligent supervision of their son, Ronnie Brown. Count VIII contained a similar claim but included allegations that the negligent supervision was "willful, wanton and reckless." Finally, Count IV of the first amended petition advanced a claim by Mrs. Hockensmith against Gary D. and Maria Brown for loss of her husband's services.

The majority holds that the "Firefighter's Rule" is applicable on the facts of the case and bars recovery on Count III, the claim of ordinary negligence against Ronnie Brown's parents. I disagree. I do not believe the record supports the conclusion that Officer Hockensmith was responding to an emergency or rescue situation such as would invoke the rule.

The "Firefighter's Rule" originated as an exception to the "Rescue Doctrine." *Gray v. Russell,* 853 S.W.2d 928, 930 (Mo. banc 1993). The "Rescue Doctrine" is, in effect, a policy choice which deems rescue attempts foreseeable for purposes of tort recovery. *Id.* at 931. It prevents the issue of proximate cause from hindering an injured rescuer's attempt to recover from the original tortfeasor by imputing the same negligence which imperiled the victim as the proximate negligence to the nonwanton rescuer. *Id.*

Just as the rescue doctrine exists for policy reasons, its benefits are withheld from "professional rescuers" on grounds of public policy "justified by the public's need for immediate and courageous action by [firefighters and police officers] in emergency situations." *Id.* "The firefighter's rule is a narrow exception to the rescue doctrine," *id.,* which provides:

[A] fireman brought in contact with an *emergency situation* solely by reason of his status as a fireman who is injured while performing fireman's duties may not recover against the person whose ordinary negligence created the *emergency.*

*Krause v. U.S. Truck Co.,* 787 S.W.2d 708, 711 (Mo. banc 1990) (emphasis added) (citing *Phillips v. Hallmark Cards, Inc.,* 722 S.W.2d 86, 87 (Mo. banc 1986)) [1]. It is limited in its application to emergency situations because it is an exception to the rescue doctrine. *Gray v. Russell,* 853 S.W.2d at 930.

In *Krause,* our Supreme Court explained the public policy rationale supporting the firefighter's rule as an exception to the "rescue doctrine," most of which need not be repeated here. *See Krause,* 787 S.W.2d at 711–12. Essentially, firefighters and police officers are "professional rescuers" who, at the scene of an emergency, are expected to act with "daring and dispatch to protect life and property." *Id.* at 713. "Such 'professional rescuers' cannot recover for injuries attributable to the negligence that required their assistance, because their position specifically requires them to confront these hazards on behalf of the public," and they are paid to do so. *Gray v. Russell,* 853 S.W.2d at 931. However, the considerations underlying the firefighter's rule do not apply in non-emergency or non-rescue situations. *Id.* "The firefighter's rule applies only in emergencies." *Id.* at 930.

In *Gray,* the court determined a police officer's claims for personal injury were not barred by the firefighter's rule because the officer was not injured in a situation requiring him to exercise his professional duty to rescue or to respond to an emergency. *Id.* at 931. This court followed *Gray* in *Winston v. BMA Corporation,* 857 S.W.2d 541 (Mo. App. W.D.1993). In *Winston,* a police officer was responding to a burglary complaint at defendant's building and was injured when the panes of the revolving door at the entrance to the building collapsed together, pinning her inside the collapsing panes. *Id.* at

---

1. The rule was extended to police officers in *Lambert v. Schaefer,* 839 S.W.2d 27, 29 (Mo.App. 1992).

541. The trial court granted summary judgment on the grounds the firefighter's rule precluded her negligence claims. On appeal, we determined the police officer was present at the defendant's building in response to a routine burglary call. "Any dangerous situation that may have surrounded the crime, no longer existed when the plaintiff entered the building ... A non-emergency and non-rescue situation existed." *Id.* at 542. We further stated:

> While the officer's response to a crime scene has some degree of urgency to it, as all police calls must, the emergency was not such as to invoke the firefighters rule. The police officer was not required to "act with daring and dispatch to protect life and property" as described in *Krause,* 787 S.W.2d at 713. Her injuries were sustained under circumstances that did not call upon her duties as a rescuer in response to an emergency situation.

*Id.* at 542–43. Accordingly, we reversed the summary judgment in favor of the defendants. *Id.* at 543.

The case at bar, like *Gray* and *Winston,* involves a non-emergency and non-rescue situation. Viewed in the light most favorable to plaintiff, the record reveals that Hockensmith was not dispatched to the Quiktrip store in response to an emergency call; he had merely stopped for a cup of coffee. When he arrived, he had no idea Ronnie Brown was present or that he was causing a public disturbance. However, when Hockensmith exited his car to enter the store, he observed Ronnie Brown yelling in the parking lot. He did not know why Brown was yelling, nor did he know if their was a problem. He approached Ronnie to inquire. Before he could fairly assess the situation, Ronnie struck Hockensmith in the right eye while Hockensmith's head was turned.

The record before the trial court in the instant case clearly shows the incident in question was not within the scope of the firefighter's rule which would have precluded Hockensmith's claims of negligence against the Browns. There is nothing in the record to indicate Hockensmith's injuries resulted from circumstances requiring him to act with "daring and dispatch." Hockensmith was responding to what at worst can be called a public disturbance. Ronnie Brown was yelling at a group of people in the parking lot. There was no emergency or rescue situation. Hockensmith was engaged in a routine, non-emergency activity, just as Officer Gray was in conducting a routine building inspection in *Gray v. Russell,* and Officer Winston was in responding to a burglary crime scene in *Winston v. BMA Corporation.* Without an emergency or rescue situation, the firefighter's rule cannot be applied. *Russell,* 853 S.W.2d at 931; *Winston,* 857 S.W.2d at 542–43. Thus, I would hold that the trial court erred in sustaining Gary D. and Maria Brown's motion for summary judgment as to Count III (ordinary negligence) of the Hockensmiths' first amended petition and would remand for further proceedings.

Count VIII of the first amended petition alleged willful, wanton and reckless negligence on the part of Gary D. and Maria Brown. This count was apparently added to the amended petition in order to avoid the impact of the firefighter's rule if it were found applicable to the case. The Hockensmiths recognized that while the firefighter's rule might be a shield against an ordinary negligence claim, it "is not a license to act with impunity or without regard for the safety officer's well-being." *Lambert v. Schaefer,* 839 S.W.2d 27, 29 (Mo.App. W.D.1992). According to *Lambert,* a police officer is permitted to recover for personal injuries sustained while performing his professional duties if the acts causing his injury involved "reckless or wanton negligence or willful conduct." *Id.* Since I would hold the firefighter's rule does not apply to the facts of this case, this count is redundant to the regular negligence allegations against Gary D. and Maria Brown in Count III, particularly since Count VIII does not include a prayer for punitive damages. The majority finds, in effect, that there are no facts in the record to support the allegations of Count VIII or to overcome evidence in the record refuting them. I do not agree with the majority's analysis but it is unnecessary that I detail my disenchantment therewith. Since I would find the firefighter's rule inapplicable to the facts of this case, I

would consider Count VIII duplicative of Count III.

Finally, in Count VI, Mrs. Hockensmith asserted a claim for loss of services. Since I would reverse the trial court's grant of summary judgment on Count III (ordinary negligence) of the first amended petition, I would likewise, of necessity, reverse its grant of summary judgment on the derivative loss of services claim.